In re Fred B. FRAMELI and Marie P. Frameli, d/b/a Sunoco 70, Debtors.

Fred B. FRAMELI and Marie P. Frameli, d/b/a Sunoco 70, Movants,

v.

REED OIL COMPANY; Pittsburgh National Bank; and Three Rivers Bank, Respondents.

Motion Nos. 92–2625M to 92–2627M. Bankruptcy No. 90–02280–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

June 16, 1993.

Daniel J. Gates, Pittsburgh, PA, for debtors.

Michael J. Henny, Ravick & Henny, P.C., Pittsburgh, PA, for respondent Reed Oil Co.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtors seek pursuant to 11 U.S.C. § 522(f)(1) to avoid several judicial liens against their personal residence which are held by respondents Reed Oil Company ("Reed"), Pittsburgh National Bank ("PNB"), and Three Rivers Bank ("Three Rivers"). Debtors assert that the liens may be avoided because they impair the exemption debtors have claimed in their residence pursuant to 11 U.S.C. § 522(d)(1).

Reed opposes the motion to avoid its judicial lien because debtors allegedly have no equity in their residence.

Debtors' motions to avoid in their entirety the judicial liens held by Three Rivers and by Reed will be granted. They also will be permitted to partially avoid PNB's judicial lien to the extent of $2,692.69. The remainder of its lien may *not* be avoided. However, should debtors amend within five (5) days the amount of the exemption claimed in their residence from $3,754.24 to $11,245.26, as they have stated they intend to do, they will be permitted to avoid PNB's judicial lien in its entirety.

## –I–
## FACTS

Debtors jointly own two (2) parcels of real property. They use one parcel as their personal residence and operated a service station on the other.

Both properties are subject to a wrap-around mortgage held by Charleroi Federal Savings Bank ("Charleroi"). The amount owed to Charleroi as of the filing of the bankruptcy petition was $71,245.76.

Both properties also are subject to several judicial liens. PNB obtained a judgment against debtors in the amount of $10,192.69 which was duly recorded in October of 1989. Three Rivers obtained a judgment against debtors in the amount of $4,042.50 which was recorded in January of 1990. Reed obtained a judgment against debtors in the amount of $10,400.00 which was recorded in March of 1990.

Debtors filed a voluntary joint chapter 11 petition on July 30, 1990. The case was converted, upon debtors' request, to a chapter 7 proceeding on March 2, 1992. A chapter 7 trustee was appointed shortly thereafter.

Amended bankruptcy schedules were filed by debtors on June 17, 1992.

Schedule A, Real Property, lists debtors' personal residence and the above commercial property. The declared value of their residence was $30,000.00. The declared value of the commercial property was $45,000.00. Both properties were listed as subject to a secured claim by Charleroi in the amount of $71,245.76.

On Schedule C, Property Claimed As Exempt, debtors claimed an exemption pursuant to 11 U.S.C. § 522(d)(1) in their personal residence. The amount of the exemption is $3,754.24, the difference between combined declared value of the two properties listed in Schedule A and the amount of Charleroi's secured claim against the properties. No objection to the claimed exemption was raised by any interested party.

Debtors claimed no exemption in the commercial property which is subject to the same wrap-around mortgage as is their residence.

Charleroi was listed on Schedule D, Creditors Holding Secured Claims, as the holder of a secured claim against both properties in the amount of $71,245.76. PNB, Three Rivers, and Reed also are listed as judgment creditors.

On August 10, 1992, debtors filed the above motions pursuant to 11 U.S.C. § 522(f)(1) to avoid the judicial liens of

PNB, Three Rivers, and Reed. Debtors maintain that these judicial liens may be avoided because they impair the exemption debtors have claimed in their residence.

Reed opposes the motion to avoid its lien on the ground that debtors have no equity in their residence over and above the wraparound mortgage against it. PNB and Three Rivers did not respond to the motions pertaining to their judicial liens.[1]

A hearing on debtors' motions to avoid these judicial liens was held on May 19, 1993. Although the parties were given an opportunity to present evidence, they elected not to do so. It was stipulated, however, that debtors' residence has a value of $30,000.00; and that their commercial property has a value of $52,500.00.

## –II–

## ANALYSIS

Debtors seek to avoid the above judicial liens pursuant to 11 U.S.C. § 522(f)(1), which provides as follows:

> (f) Notwithstanding any waiver of exemption, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (1) a judicial lien; . . . .

Congress intended when it enacted this provision to provide debtors in chapter 7 cases with a "fresh start", including some equity in their residence, at the conclusion of the case. *See In re Fisher*, 117 B.R. 191, 192 (Bankr.W.D.Pa.1990).

The following procedure applies in determining whether or not a judicial lien is avoidable pursuant to 11 U.S.C. § 522(f)(1).

■ The initial step is to determine whether debtor would have been entitled to claim an exemption in the property in the absence of the judicial lien. The extent to which debtor has equity, if any, in the absence of that lien must be determined. *See In re Galvan*, 110 B.R. 446, 450 (9th Cir. BAP 1990).

■ Equity in this instance is ascertained by subtracting all security interests in the property to be exempted—exclusive of the judicial lien at issue and interests, if any, which are junior to the judicial lien—from the value of the property. *Id.*

■ Section 522(f)(1) is *not* a device for benefitting a debtor by creating equity where none exists. Lien avoidance pursuant to this provision may not occur unless debtor has equity in the property which is subject to the judicial lien whose avoidance is sought. *See In re Simonson*, 758 F.2d 103, 105–06 (3d Cir.1985).

■ The second step is to determine the extent, if any, to which the available exemption[2] is impaired by the judicial lien. *See In re Galvan*, 110 B.R. at 450. A judicial lien is avoidable to the extent that it impairs the available exemption. *Id.*

■ This determination is made by subtracting the amount of the judicial lien from the equity which exists. *Id.* If the resultant amount is greater than the available exemption, there is no impairment and, accordingly, no avoidance of the lien. *Id.* If the resultant amount is greater than zero but less than the available exemption, impairment occurs to the extent of the deficiency. *Id.* Finally, if the resultant amount is equal to the amount of the claimed exemption, impairment of the available exemption is total. *Id.*

■ Reed argues that debtors cannot avoid its judicial lien because they have no equity in their residence, which has a stipulated value of $30,000.00. The wraparound mortgage, Reed insists, exceeds the

---

1. The court denied debtors' request at hearing on the motion that default be entered against PNB and Three Rivers because they had not responded to debtors' motions to avoid their liens. The court stated on the record that it would apply the law as it pertained to the liens of PNB and Three Rivers and would decide whether or not their liens could be avoided.

2. The available exemption, for purposes of section 522(f)(1), is defined as the lesser of: (1) the equity debtor has in the property sought to be exempted; or (2) the maximum allowable amount of the claimed exemption. *In re Galvan*, 110 B.R. at 450.

value of debtors' residence by $41,245.76. This argument is without merit.

The factual scenario presented in this case differs in a crucial way from those presented in *Simonson* and in *Fisher*. *Simonson* and *Fisher* involved a single parcel of real property in which debtor claimed an exemption and which was subject to one (or more) mortgage. No mortgage applied to the exempted property as well as to another property in which no exemption had been claimed. The present case differs in that several properties, only one of which has been claimed as exempt, are subject to the same mortgage.

There is no requirement that the value of *only* the property in which the exemption has been claimed be set against the amount due and owing on the wrap-around mortgage in determining whether debtor has any equity for purposes of section 522(f)(1). The most sensible approach in such situations is to set the *combined* value of all of the properties subject to the wrap-around mortgage against the outstanding amount owed thereon. A debtor has equity in that instance only if the *combined* value of the properties is greater than the outstanding balance of the wrap-around mortgage.[3]

Application of the first step of the above-described procedure to this case reveals that debtors would be entitled to claim an exemption in their personal residence in the absence of the above judicial liens. The combined value of the two properties is $82,500.00. The only security interest in the properties is the outstanding balance of $71,245.76 owed to Charleroi. Debtors' equity in the properties, exclusive of the judicial liens sought to be avoided, is $11,254.24 ($82,500.00 − $71,245.76 = $11,254.24).

Application of the second step reveals that debtors' exemption is impaired by PNB's judicial lien. The amount remaining after the amount of PNB's lien ($10,192.69) is subtracted from debtors' equity ($11,254.24) is $1,061.55 ($11,254.24 − $10,192.69 = $1,061.55).

As has been explained, if this remainder is greater than zero but less than the claimed exemption, impairment occurs to the extent of the deficiency. If the remainder is zero or a negative number, impairment of the exemption is total. The remainder of $1,061.55 after PNB's judicial lien has been subtracted from debtors' equity is less than the claimed exemption and thus impairs it by $2,692.69 ($3,754.24 − $1,061.55 = $2,692.69).

Accordingly, debtors may avoid PNB's judicial lien to the extent of the deficiency of $2,692.69. They may *not*, however, avoid the remaining $7,500.00 of its judicial lien ($10,192.69 − $2,692.69 = $7,500.00).[4]

One final matter remains.

■ Debtors' counsel stated at hearing on their motions to avoid the above judicial liens that debtors intended to claim an exemption to the full extent of the equity available in the properties subject to the wrap-around mortgage. Counsel represented that debtors in the very near future would amend the amount of their exemption to reflect the $11,254.24 in equity which exists.

■ Amendments are to be liberally granted. Debtors are permitted to amend their schedules pursuant to Federal Rule Of Bankruptcy Procedure 1009(a) as a matter of course at any time before the case is closed. *See In re Kobaly*, 142 B.R. 743, 748 (Bankr.W.D.Pa.1992).

**3.** Reed's assertion that debtors have no equity in their residence is without merit even if the value of *only* the residence is taken into account rather than the combined value of both properties. If the *commercial* property were sold to a third party at its stipulated value of $52,500.00 and the proceeds then applied to the wrap-around mortgage, the outstanding balance would be reduced to $18,745.76 ($71,245.76 − $52,500.00 = $18,745.76). If, as has been stipulated, debtors'

residence has a fair market value of $30,000.00, debtors would then have equity in their residence in the amount of $11,254.24 ($30,000.00 − $18,745.76 = $11,254.24).

**4.** The judicial lien of Three Rivers and of Reed, which are junior to PNB's judicial lien, are avoidable in their entirety under this analysis. Debtors' claimed exemption is completely impaired by their liens.

If debtors amended their exemption, as they claim they intend to do, by increasing the amount of the exemption to $11,-254.24—i.e., to the amount of the equity they have in the properties—, debtors would be entitled to avoid PNB's judicial lien in its entirety. Their exemption in that event would be impaired by the full amount of PNB's judicial lien.

Judicial economy would be served by making such a determination at this time. However, if debtors do not so amend their claimed exemption within five (5) days, they will be permitted to avoid PNB's judicial lien *only* to the extent of $2,692.69.

Appropriate orders shall be issued.