**In re Firooz ABRAHIMZADEH a/k/a Fred Abrahim, Debtor.**

**Bankruptcy No. 93–22354.**

United States Bankruptcy Court, D. New Jersey.

Jan. 3, 1994.

Andre L. Kydala, Clinton, NJ, for debtor.

DECISION

NOVALYN L. WINFIELD, Bankruptcy Judge.

Before the court is a motion brought pursuant to Bankruptcy Code § 522(f)(1) and Bankruptcy Rules 4003(d) and 9014 by Firooz Abrahimzadeh a/k/a Fred Abrahim, ("Debtor") to avoid the judicial lien of TEC Products Co., Inc. ("TEC Products"). The following constitutes the Court's findings of

fact and conclusions of law as required by Bankruptcy Rule § 7052.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K). Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS

On March 24, 1993, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Debtor and his non-debtor spouse own their residence located on 10 Skylark Drive in Springfield, New Jersey as tenants by the entirety. The Debtor estimates the fair market value of the property at $240,000.00, determined by comparison to an Affidavit of Consideration executed for the sale of another house of similar location, acreage and condition. (Certif. of Kydala at 1.) The property is encumbered by three mortgages: (1) Dime Savings Bank ($162,500); (2) the Trust Company of New Jersey ($50,000); and (3) Everlast Supply Company ($3,500)—approximately $216,-000.00 in the aggregate. Additionally, prior to the commencement of the case, a judgment had been entered against the Debtor by TEC Products in the amount of approximately $55,000.

Debtor claims a homestead exemption pursuant to Bankruptcy Code § 522(d)(1). Debtor calculates that once the mortgages and cost of sale are deducted from the fair market value, he realizes approximately $4,800 as his half-share of the equity in the property. The Debtor's calculations of liens encumbering the property and his property exemption are as follows:

| | | |
|---|---|---|
| Fair market value of property | $ 240,000.00 | |
| Less Cost of sale at 6% | (14,400.00) | |
| | $ 225,600.00 | |
| Less Mortgages: | | |
| Dime Savings Bank | (162,500.00) | |
| Trust Company of N.J. | (50,000.00) | |
| Everlast Supply Company | (3,500.00) | |
| EQUITY IN PROPERTY | $ 9,600.00 | |
| DEBTOR'S EQUITY (½ Interest) | $ 4,800.00 | |

Debtor concludes that since the available equity is insufficient to allow payment of both his exemption and the judgment lien, the judgment lien should be avoided in its entirety.

TEC Products did not file opposition papers nor did it appear on the return date of Debtor's motion. On the return date, in response to the court's questioning of the debtor's calculation of his equity and the extent to which the lien could be avoided, Debtor's counsel requested and was afforded an opportunity to file a brief to substantiate the basis for the relief sought. The court has considered the legal argument of counsel in rendering its decision.

## DISCUSSION

Debtor seeks to avoid the TEC Products' judicial lien on his residential real property pursuant to 11 U.S.C. § 522(f)(1) which provides:

(f) Notwithstanding any waiver of exemption, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; ....

The determination of whether a judicial lien is avoidable involves a two-step analysis. *In re Frameli*, 155 B.R. 354, 356 (Bkrtcy.W.D.Pa.1993). First, debtor's right to claim an exemption must be established by evidence of equity in the property absent the judicial lien. *In re Simonson*, 758 F.2d 103, 105–106 (3rd 1985); *In re Arevalo*, 142 B.R. 111, 114–115 (Bkrtcy.D.N.J.1992). Moreover, the Debtor must have had the property interest to which the judicial lien attached at some point before the lien attached to the property. *Farrey v. Sanderfoot*, 500 U.S. 291, ——, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991). Secondly, after a determination that the debtor has an exemptible property interest, the extent to which the judicial lien impairs the exemption must be determined. *Frameli*, 155 B.R. at 356.

When calculating Debtor's equity, the value of the property as of the date of filing of the debtor's petition is employed. *In re Grube*, 54 B.R. 655 (Bkrtcy.D.N.J.1985). The term "value" means fair market value as

of the date of the filing of the petition. 11 U.S.C. § 522(a), HR Rep. No. 595, 95th Cong., 1st Sess. 362 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318. The Debtor estimates the value of his residence at $240,000. Since the Debtor bases his estimation on a recent sale, and provides the estimated value within a matter of a few months of the petition date, and there is no opposition, the court accepts the Debtor's value.

■ The Debtor asserts that the market value of his residence should be further modified by subtraction of estimated costs of sale to produce, in effect, a net market value. From this net market value the Debtor deducts the consensual liens to arrive at the equity to which the exemption is applied. Although the Debtor's reasoning is not articulated, presumably like the debtor in *Winderfelder*, 82 B.R. 367, 372 (Bkrtcy.E.D.Pa. 1988), he believes that the hypothetical costs of sale should be deducted because these costs would be paid as part of the administrative expenses of the case.

However, such reasoning fails on two grounds. Firstly, the generally accepted definition of fair market value is premised upon the notion that such value is measured by the amount a willing and able buyer would tender a willing and able seller, not under a compulsion to sell. *Id. See, In re Rehbein*, 49 B.R. 250, 253 (Bkrtcy.D.Mass.1985); 2 Norton, *Bankruptcy Law and Practice*, § 26.12.50 at 247 (1984 cumulative supplement). This court presumes that Congress intended that this accepted usage of the term "fair market value" would be ascribed to its usage in § 522, since statutory construction begins with the assumption that the ordinary meaning of the language accurately express-

es the legislative purpose. *Rake v. Wade*, — U.S. —, —, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993) (apply "the most natural reading of the phrase" to interpret the language of the Code). Accordingly, there is no basis in the language of the statute to permit deduction of costs of sale.

Secondly, in the usual sale of real property by a trustee the costs of sale are an expense of administration and are paid from estate funds with the remaining funds distributed according to the priorities established by the Code. The homestead exemption is generally not charged with the costs of liquidating the property for the benefit of creditors since after it is exempted the exemption amount is not estate property.[1] In short, even in the event of a liquidation sale by a trustee the costs of sale do not reduce the fair market value of the real property for purposes of allowing the exemption. Rather, they reduce the amount of sale proceeds available to satisfy claims against the estate. Accordingly, the Debtor cannot deduct cost of sale to arrive at the fair market value of his property for purposes of calculating his exemption.

Adopting the Debtor's valuation of the residence, and omitting the cost of sale, approximately $24,000 in equity remains after subtraction of the consensual liens:

| | |
|---|---|
| Fair market value of property | $ 240,000.00 |
| —Mortgages: | |
| Dime Savings Bank | (162,500.00) |
| Trust Company of N.J. | (50,000.00) |
| Everlast Supply Company | (3,500.00) |
| EQUITY IN PROPERTY | $ 24,000.00 |
| DEBTOR'S EQUITY (½ Interest) | $ 12,000.00 |

As illustrated, Debtor's one-half interest in the equity (approximately $12,000) exceeds the full amount of the statutorily permissible homestead exemption.[2]

---

1. Code § 522(k) states:
   Property that the debtor exempts under this section is not liable for payment of any administrative expense except—
   (1) the aliquot share of the costs and expenses of avoiding a transfer of property that the debtor exempts under subsection (g) of this section, or of recovery of such property, that is attributable to the value of the portion of such property exempted in relation to the value of the property recovered; and
   (2) any costs and expenses of avoiding a transfer under subsection (f) or (h) of this section, or of recovery of property under subsection (i)(1) of this section, that the debtor has not paid.

2. Pursuant to 11 U.S.C. § 522(d)(1) and (5), the Debtor is entitled to an exemption worth a maximum of $7,900 of the existing equity in the real property ($7,500 under ¶ (D)(1), and an additional $400 under ¶ (d)(5)). On his Schedule of Property Claimed as Exempt the Debtor claims a homestead exemption of $5,000. According to these revised calculations, the Debtor is entitled to claim $7,900 as his federal homestead exemption.

With the Debtor's entitlement to an exemption established, the court must determine whether that exemption is impaired by the TEC Products lien, and the degree to which it can be avoided. If deduction of the judicial lien leaves equity which is less than the available exemption, then impairment arises to the extent of the deficiency. *In re Galvan*, 110 B.R. 446, 450 (9th Cir. BAP 1990). The fixing of the $55,000 judicial lien on the Debtor's equity in the real property ($12,000) results in the impairment of the Debtor's exemption. *See generally, In re Bellenoit*, 157 B.R. 185 (Bkrtcy.D.Mass.1992).

Based on this impairment, the Debtor further contends that he is entitled to avoid the entire amount of the lien because it impairs his ability to realize the full benefit of future appreciation in the value of his property—a right that he claims should inure to the debtor and not the creditor. *Galvan*, 110 B.R. at 451–452 ("unsecured liens allowed to remain on the debtor's property will impair a debtor's fresh start by partaking in post-petition property acquisitions and equity build up."). As set forth in greater detail below, the court concludes that under § 522(f) a debtor may only avoid a lien to the extent that it impairs the amount of the available exemption, and the remainder of the lien, if any, is unavoidable, but subordinate to the allowed exemption. *See, Chabot*, 992 F.2d 891, 895 (9th Cir.1993) (the right to a fresh start does not establish a "basis for the proposition that the homestead exemption provides ownership benefits, such as the right to appreciation, beyond the set amount.").

The court in *In re Serapiglia*, 123 B.R. 481, 482 (Bkrtcy.E.D.N.Y.1990) observed that § 522(f) is new to the Code and reflects Congressional intent to broaden the debtor's exemptions to facilitate the fresh start provided by bankruptcy. Thus, cases in favor of complete avoidance of the judicial lien reason that implicit in the statutory grant of the debtor's fresh start is the authorization to extinguish a judicial lien as a cloud on title following bankruptcy. *In re Gunter*, 100 B.R. 311, 314 (Bkrtcy.E.D.Va.1985) ("the debtors' 'fresh start' ... would be undermined by allowing the defendant's lien to subtly lie in ambush until after bankruptcy

and suddenly, when debtor's accumulate equity, the defendant goes on the attack.") These courts employ a broad reading of the term "impaired" and the powers vested in § 522(f). *See, In re Herman*, 120 B.R. 127, 131 (9th Cir. BAP 1990) (where creditor's lien has no present economic value the lien essentially is just a cloud upon the debtor's title and right to future enjoyment of the property and the lien impairs the exemption); *Galvan*, 110 B.R. at 451 (debtor's fresh start entitles him to "reap the fruits" of post petition appreciation of his real estate, therefore the unsecured portion of a judicial lien cannot remain as a charge against the property in which the debtor has exemption rights); *In re Packer*, 101 B.R. 651 (Bkrtcy.D.Colo. 1989).

Indeed, the legislative history reveals that § 522(f) was enacted to "protect the debtor's exemptions, his discharge, and thus his 'fresh start' by permitting him to avoid certain liens on exempt property." H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318; S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1988), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862. Notably, however, the legislative history provides only that the judicial lien may be avoided *"to the extent that the property could have been exempted in the absence of the lien." Id.* While mindful that Congress certainly intended to protect the debtor's fresh start, the court does not read this legislative history to mandate complete avoidance of liens. On the contrary, this expression of legislative intent is entirely consistent with the limiting language of Code § 522(f) and is harmonious with the overall Bankruptcy Code policy which seeks to balance the rights of debtors and creditors. Courts that hew closely to the wording of the statute find that the debtor's avoidance powers under § 522(f) are much more limited. *See, In re Prestegaard*, 139 B.R. 117, 119 (Bkrtcy.S.D.N.Y.1992); *Chabot*, 992 F.2d at 894; *In re Paul Menell*, 160 B.R. 524 (Bkrtcy.D.N.J.1993). Such cases explicate that § 522(f) contains limiting language so that avoidance of judicial liens is permitted only *"to the extent* that such lien impairs an exemption...." 11 U.S.C. § 522(f) (emphasis added). *See, In re Cerniglia*, 137 B.R.

722, 725 (Bkrtcy.S.D.Ill.1992); *In re D'Amelio*, 142 B.R. 8, 10 (Bkrtcy.D.Mass.1992) (the exemption must fall in place after the consensual liens but before the judicial liens in order to have value so that judicial liens do not impair the exemption and lienholders benefit from any appreciation in the property.); *In re Jordan*, 5 B.R. 59 (Bkrtcy.D.N.J. 1980); *In re Chabot*, 992 F.2d 891 (9th Cir. 1993). The intent to permit a debtor to avoid a judicial lien beyond the exempt amount is conspicuously absent from the statutory language. *Prestegaard*, 139 B.R. at 119.

Following such a reading of section 522(f) is also consistent with recent Supreme Court cases premised on the notion that liens and other security interests ordinarily survive bankruptcy. *Farrey v. Sanderfoot*, 500 U.S. 291, ——, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991); *Johnson v. Home State Bank*, 501 U.S. 78, ——, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991); *Dewsnup v. Timm*, 502 U.S. ——, ——, 112 S.Ct. 773, 776, 116 L.Ed.2d 903 (1992). In *Dewsnup*, the Supreme Court concluded with respect to a mortgagee's lien that "any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor." *Id.* at ——, 112 S.Ct. at 778.

Thus, it is clear that a debtor does not have the power to void a judicial lien which impairs his homestead exemption, except to the extent that the value of the exemption is impaired. As the *Cerniglia* court stated:

> This power may not be expanded to allow avoidance of the unsecured portion of the lien that would otherwise survive the debtor's discharge. To so interpret § 522(f)(1) would be to grant the debtor not merely the benefit of his exemption in the homestead property but also all the benefits of ownership beyond the exemption amount, including the right to any increase in value caused by subsequent events.

*Cerniglia*, 137 B.R. at 725.

Finally, viewing the maximum amount of the available homestead exemption as setting the limits for the amount of the judicial lien that can be avoided results in consistency in application of the statute. A debtor whose residence is sold by the trustee can receive from the proceeds of the sale no more than the maximum amount of her exemption. The balance of the sale proceeds go to satisfy claims against the bankruptcy estate. If a debtor whose residence has insufficient equity to warrant a sale by the trustee is permitted to void the entire judicial lien and receive all future appreciation in value, then that debtor receives a much more valuable exemption, an inequitable result.

### CONCLUSION

For the reasons set forth in the foregoing opinion the debtor's motion is denied to the extent it seeks full avoidance of the judicial lien. However, the debtor may amend his claimed exemption, and the judicial lien is avoided to the extent of the exemption. Counsel for the debtor shall settle an order on notice to TEC Products.