In re Hugh M. CROSS, Cynthia
L. Cross, Debtors.

Bankruptcy No. 93–16834DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 7, 1994.

Jeffrey C. McCullough, Doylestown, PA,
for debtors.

Robert A. Badman, Morrisville, PA, for
Bucks County Bank & Trust Co.

Michael Kaliner, Fairless Hills, PA, Trustee.

Frederic Baker, Philadelphia, PA, Asst.
U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

In *In re Magosin,* 75 B.R. 545, 547 (Bankr.
E.D.Pa.1987), this court set down a specific
formula to be used in applying the deceptively-opaque language of 11 U.S.C. § 522(f)(1),
relating to avoidance of judicial liens. A
lienholder has taken issue with the formulation set forth in *Magosin,* contending that it
is inconsistent with the principles set forth
by the Supreme Court in *Dewsnup v. Timm,*

—— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903
(1992), and the holdings of several other
bankruptcy courts.

We find no basis to abandon the *Magosin*
formula, reiterated in *In re Brantz,* 106 B.R.
62, 68 (Bankr.E.D.Pa.1989). Not only do we
find that *Dewsnup* has no application to this
scenario, but we observe that the Supreme
Court itself expressly approved our formulation in *Owen v. Owen,* 500 U.S. 305, ——, n.
5, 111 S.Ct. 1833, 1838 n. 5, 114 L.Ed.2d 350
(1991).

### B. PROCEDURAL AND FACTUAL HISTORY

On November 23, 1993, HUGH M. CROSS
and CYNTHIA L. CROSS (hereinafter "the
Debtors"), filed a voluntary joint Chapter 7
bankruptcy case. On January 10, 1994, the
Debtors filed two motions, pursuant to 11
U.S.C. § 522(f)(1), seeking to avoid two judicial liens obtained against their residential
real estate at 27 Carriage Drive, Doylestown,
Pennsylvania 18901 ("the Home"), in the
amounts of $5,565.00 and $100,296.97, by Tremark Management Inc. ("Tremark") and
Bucks County Bank & Trust Co. ("Bucks"),
respectively.

Of the two judicial lien creditors, only
Bucks opposed the Debtors' motions. Tremark did not appear nor respond to the
motion referencing its lien, and this court is
at this time executing an unopposed Order
avoiding Tremark's judicial lien against the
Home.

Bucks appeared at the scheduled February
10, 1994, hearing on the motion referencing
its lien. It presented this court with a copy
of *In re D'Amelio,* 142 B.R. 8 (Bankr.
D.Mass.1992), in which the court held, *inter
alia,* that an interpretation of § 522(f)(1) consistent with this court's decision in *Magosin*
was undermined by *Dewsnup,* and a printout
containing citations of other cases purportedly reaching the same conclusion. Bucks
therefore contended that its junior judicial
lien could be avoided in part only. More
specifically, Bucks argued that *Dewsnup, supra,* and the reasoning of these cases limited
the Debtors' avoidance of its lien to their
equity in the Home. This application of

§ 522(f)(1) would effectively preserve, in Bucks, the future appreciation of, and the paydowns in principal of the senior liens on, the Home.

The parties were invited to, and did timely, file Briefs in support of their positions on or before February 18, 1994 (Bucks), and February 25, 1994 (the Debtors).

The material facts are not in dispute. Both parties agree the Home is valued at $106,000.00 and owned by the Debtors as tenants by the entireties. The Home is subject to a first mortgage of $56,672.11 and a second mortgage of $34,819.00, totaling $91,-581.11. The Debtors have claimed, without contest, a combined $15,000 exemption pursuant to 11 U.S.C. § 522(d)(1), authorizing a $7,500.00 homestead exemption for each of them. Bucks' judicial lien, which is junior to not only the mortgages but also Tremark's judgment, resulted from a deficiency judgment after foreclosure on a property other than the Home. Applying these facts, Bucks contends that the Debtors may avoid its lien in only the amount of $106,000 less $91,-581.11, or $14,418.89. The Debtors, meanwhile, applying the *Magosin* formula, argues that Bucks' lien may be avoided in its entirety.

## C. DISCUSSION

The pertinent Bankruptcy Code provision, 11 U.S.C. § 522(f)(1), states as follows:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (1) a judicial lien; ...

Bucks agrees that the Debtors are entitled to avoid its judicial lien in part, but argues that the language of § 522(f)(1) prevents avoidance of its lien "except in the amount by which the value of the Property exceeds the total of the mortgage liens against the Property." Brief by Bucks County Bank and Trust in Opposition to Debtors' Motion to Avoid Judicial Lien Pursuant to U.S.C. Section 522(f)(1), at 2.

The issue before this court is whether the amount of Bucks' lien that exceeds Debtors' equity in the Home, after elimination of the Tremark lien, may be avoided. We begin by considering whether the Debtors have an "interest" in the Home to which their exemption may attach. In *In re Simonson*, 758 F.2d 103, 105 (3rd Cir.1985), the court defined "an interest of the debtor in property" to mean an interest of the debtor measured by taking into account those interests of other parties which may not be avoided under section 522(f).

Section 522 states, on its face, that "a judicial lien" may be avoided to the extent that the debtor's interest would have been impaired without the fixing of the lien. In determining whether the instant Debtors' interest has been "impaired," thereby allowing avoidance of Bucks' lien to the extent of that impairment, it is important to first note that, in this case, the amount of Debtors' exemption exceeds the equity remaining after the consensual liens are deducted. We emphasize this point for two reasons. First, under *Simonson, supra*, and 11 U.S.C. § 541, the interest of debtor in property may include both a legal as well as equitable interest. Second, the presence of the Debtors' equity in the Home makes it unnecessary for us to decide the effect of § 522(f)(1) on a debtor's exemption where the debtor has no equity in the property after deducting for consensual liens.[1]

In *Magosin, supra*, 75 B.R. at 547, and again in *Brantz, supra*, 106 B.R. at 68, we held that the steps to be followed in applying § 522(f)(1) are as follows:

1. Determine the value of the property on which the judicial lien is sought to be avoided.

2. Deduct the amount of all liens not to be avoided from (1).

3. Deduct the Debtors' allowable exemptions from (2).

4. Avoidance of all judicial liens results unless (3) is a positive figure.

---

1. However, under the *Magosin* formula *infra*, we would allow a debtor to avoid a judicial lien pursuant to § 522(f)(1) even if the Debtors had no equity in the Premises.

5. If (3) does not result in a positive figure, do not allow avoidance of liens, in order of priority, to that extent only.

Therefore, using the *Magosin/Brantz* method of calculation to determine whether Bucks' lien may be avoided results in its avoidance in its entirety, as follows:

| (1) | Value | | $106,000.00 |
|-----|-------|---|-----------|
| (2) | Less: | 1st Mortgage | (56,762.22) |
| | | 2nd Mortgage | (34,819.00) |
| | Total Consensual Liens | | (91,581.11) |
| | Equity | | 14,418.89 |
| (3) | Less: | Exemptions | (15,000.00) |
| (4) | Net Equity | | $ (81.00) |

Since Step (4) does not yield a positive number, avoidance of all judicial liens results. This calculation demonstrates that there is no remaining equity in the property after deducting the amount of the non-avoidable mortgages and the Debtors' exemptions, thereby requiring that *all* judicial liens be avoided under this formula.

Bucks has cited to a significant number of cases which have not followed the reasoning of *Magosin.* However, contrary to the implication of Bucks, these cases have not spoken with one voice. Rather, they have expressed several different formulas which are as different from one another as they are different from that established in *Magosin,* and the formula suggested by Bucks (the lien avoidance is restricted to the Debtors' equity in the liened realty) is not a very popular alternative. Neither have these cases been consistent in their assessment of the relevance of *Dewsnup* to the application of § 522(f)(1). Some cite to it favorably, some specifically find that it is irrelevant, and many do not cite it at all.

The largest group of cases holds that debtors' § 522(f)(1) lien avoidances are limited to the amount of their exemptions. *See In re Chabot,* 992 F.2d 891, 895 (9th Cir.1993); *In re Sanders,* 156 B.R. 667, 671 (D.Utah 1993); *In re Abrahimzadeh,* 162 B.R. 676, 678–79 (Bankr.D.N.J.1994); *In re Mershman,* 158 B.R. 698, 704 (Bankr.N.D.Ohio 1993); *In re Gonzalez,* 149 B.R. 9, 11 (Bankr.D.Mass.

1993); and *In re Prestegaard,* 139 B.R. 117, 120 (Bankr.S.D.N.Y.1992). Of these cases, only *Chabot, Mershman,* and, to a very limited degree, *Gonzalez,* cite *Dewsnup* in support of their analysis. The *Sanders* court expressly declined to make a *Dewsnup*-related analysis. 156 B.R. at 671 n. 7. *Prestegaard* expressly rejects any pertinence of *Dewsnup.* 139 B.R. at 120.

Two cases, *In re Bellenoit,* 157 B.R. 185, 188 (Bankr.D.Mass.1992); and *D'Amelio, supra,* 142 B.R. at 10, envision lien avoidance as subordination or displacement of judicial liens by debtors' exemptions. *D'Amelio,* as Bucks noted, relies heavily upon *Dewsnup. Bellenoit* in turn adopts the reasoning of *D'Amelio.* However, in *In re Garro,* 161 B.R. 869, 870 (Bankr.D.Mass.1993), Judge Hillman, the author of *D'Amelio,* recants his analysis and adheres to the analysis presented by his colleague, Chief Judge Queenan, in *Gonzalez,* thereby undercutting the foundation from both of these cases.[2]

One case, *In re Cerniglia,* 137 B.R. 722, 726–28 (Bankr.S.D.Ill.1992), relying heavily upon *Dewsnup* and applying Illinois state law, appears to hold that a judicial lien can be avoided only to the extent that debtors' equity in their realty exceeds their exemptions.

Two cases, *In re Scheaffer,* 159 B.R. 758, 7861–62 (Bankr.E.D.Va.1993); and *In re Arevalo,* 142 B.R. 111, 114 (Bankr.D.N.J.1992), only the former of which relies upon *Dewsnup,* merely hold that, if the debtor has no equity in real estate, that debtor may not utilize § 522(f)(1). *But see* page 497 *supra* & n. 1.

The only case which actually adopts the analysis suggested by Bucks, *i.e.,* that, when a debtor has equity in realty, lien avoidance is restricted to the amount of that equity, is *In re Menell,* 160 B.R. 524, 525–26 (Bankr.

---

**2.** Judges Hillman and Queenan both fail to note that the Supreme Court, in *Owen,* expressly approved the different formation, consistent with *Magosin/Brantz,* articulated by Judge Gabriel of that district in *In re Carney,* 47 B.R. 296, 299 (Bankr.D.Mass.1985). *See* page 500 *infra.*

D.N.J.1993). Judge Stripp, who was the author of *Menell* but not any of the other New Jersey § 522(f)(1) decisions, does not cite *Dewsnup* in this decision.

A quantitative analysis of the foregoing cases yields the conclusion that the position of Bucks has been adopted by only one court (*Menell*) and that court did not, as does Bucks, rely upon *Dewsnup*. The explicit contention of Bucks that it is espousing a majority position therefore does not withstand close analysis.

The judges of this and other Pennsylvania jurisdictions, as well as certain other courts, have consistently utilized the *Magosin* formula. These courts have, we think properly, recognized that lien avoidance is a tool expressly given to a debtor by Congress, which is to be liberally construed in the debtor's favor, and they have not striven to find a means for restricting the effect of this device.

The earliest decision on this issue in this jurisdiction was rendered by former Chief Judge Goldhaber, who held that § 522(f) is intended "to aid the debtor's fresh start and to insure that the debtor's post-petition efforts enure to his benefit and not the benefit of his creditors." *In re Rappaport,* 19 B.R. 971, 973 (Bankr.E.D.Pa.1982). The reasoning of *Rappaport,* quoting from the decision of Chief Judge Cosetti of the Western District of Pennsylvania in *In re Tanner,* 14 B.R. 933, 936 (Bankr.W.D.Pa.1981), was that

> "[t]he assets of the Debtor are determined at time of filing. Apart from allowable exemptions, the remainder of the Debtor's assets are distributed to his creditors. The Debtor receives a discharge and a new beginning. *Property acquired afterward is not subject to claims of pre-petition creditors. Appreciation of property or an increase of equity ownership by the reduction of an outstanding mortgage are examples of after acquired property* which are attributable to the Debtor's post-bankruptcy efforts. If a [judicial lien] is not avoidable to the extent it is undersecured, a pre-petition creditor will impair the Debtor's fresh start by partaking in his post-petition acquisitions." (emphasis added in *Rappaport* ).

Courts holding to the contrary reason that continuing, post-bankruptcy imposition of the judicial lien on the "appreciation" of the debtor's property is warranted. Thus, in *Abrahimzadeh,* 162 B.R. at 679, the court concludes that (1) § 522(f)(1) was not meant to broaden the scope of the exemption to include ownership rights in future appreciation in favor of the debtor; and (2) the debtor's fresh start is not interfered with by this imposition. These cases summarily hold that § 522(f)(1) does not authorize avoiding any portion of a judicial lien to the extent that it exceeds the amount by which the debtor's exemption is impaired. *See Chabot, supra,* 992 F.2d at 895–96; *Prestegaard, supra,* 139 B.R. at 119–20; and *Abrahimzadeh, supra,* 162 B.R. at 678–79.

In *Abrahimzadeh,* 162 B.R. at 680, Judge Winfield argues that the "cloud" on the debtor's title resulting from subordinating a judicial lien to the debtor's exemption would not interfere with the debtor's fresh start and that the homestead exemption was not meant to confer upon debtors any benefits of ownership beyond their exemptions. However, we believe that nestled in this "cloud" on title is a potential thunderstorm which may wash away an important aspect of the fresh start that Chapter 7 was legislatively intended to provide.

We believe that this "cloud" on a debtor's title interferes with the debtor's rights to future appreciation of the property in issue, a time-honored incident to ownership rights. Imposing upon the debtor the cost to remove that cloud should the debtor choose to sell the property deprives the debtor of the full measure of what he "would have been" entitled to as a result of his exempted interest under § 522(f)(1).

The courts which cite to *Dewsnup* in support of their result rely on the Court's statement there that, with respect to a mortgage lien, "[a]ny increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor...." — U.S. at ——, 112 S.Ct. at 778.

However, *Dewsnup* addresses only a Chapter 7 debtor's attempt to "avoid" a consensual lien, such as a mortgage, through the

medium of 11 U.S.C. § 506(d), which the Court concludes does not allow for "avoidance." Consensual liens, such as are the subject of *Dewsnup,* cannot be avoided under § 522(f)(1). *See In re Aikens,* 87 B.R. 350, 355 (Bankr.E.D.Pa.1988). However, it is impossible to argue that § 522(f)(1), which expressly so provides, does not allow for avoidance of judicial liens.

In *Dewsnup,* the Court expressly cautions against applying its principles in contexts other than a Chapter 7 case in which "avoidance" of a consensual lien is attempted. —— U.S. at ——, 112 S.Ct. at 777–78. Thus, as we observed in *In re Hirsch,* 155 B.R. 688, 689–90 (Bankr.E.D.Pa.1993), *Dewsnup* was not relied upon as a basis for restricting "avoidance" of a portion of consensual liens in Chapter 13 cases in *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). *See also Sapos v. Provident Institution of Savings in Town of Boston,* 967 F.2d 918, 924–25 (3rd Cir.1992) (*Dewsnup* held not to apply to a Chapter 13 bankruptcy case). We believe that it is much more productive to borrow the analysis of a decision of the Supreme Court which addresses § 522(f)(1) itself, *Owen, supra,* than it is to attempt to engage the admittedly-limited application of the reasoning of *Dewsnup* upon an analysis of § 522(f)(1).

Chief Justice Rehnquist, writing for an 8–1 majority in *Owen,* does so in tones much more sympathetic to debtors regarding lien avoidance under § 522(f)(1) than does Justice Blackmmun, speaking for a 7–2 majority addressing utilization of § 506(d) to effect lien stripping in *Dewsnup.* As a general approach to reading the language of § 522(f)(1), which is obviously open to differing interpretations, the Court states as follows, 500 U.S. at 309–12, 111 S.Ct. at 1836–37:

> To determine the application of § 522(f) [bankruptcy courts] ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he *would have been* entitled but for the lien itself.[4]

4. *See, e.g., In re Simonson,* 758 F.2d 103, 105 (CA 3 1985); *In re Brantz,* 106 B.R. 62, 68 (Bkrtcy.Ct.E.D.Pa.1989); *In re Carney,* 47 B.R.

296, 299 (Bkrtcy.Ct.W.D.Pa.1981); *Losieniecki,* 17 B.R. 136, 138 (Bkrtcy.Ct.W.D.Pa.1981). *See also* 3 Collier on Bankruptcy ¶ 522.29 (15th ed. 1990); B. Weintraud & A. Resnick, Bankruptcy Law Manual ¶ 4.08[2] (1986); Bowmar, Avoidance of Judicial Liens that Impair Exemptions in Bankruptcy; The Workings of 11 U.S.C. § 522(f)(1), 63 Am.Bankr.L.J. 375, 387–88, and n. 85 (1989) (hereinafter Bowmar)....

More important to the solution of the instant controversy, the Court, addressing the specific formula to be utilized to effect the general approach to § 522(f)(1) which it articulated, states as follows, 500 U.S. at 311–14, 111 S.Ct. at 1837–38:

> We have no doubt, than, that the lower courts' unanimously agreed-upon manner of applying § 522(f) to federal exemptions—ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien—is correct.[5]

5. For a more precise formulation, *see In re Brantz,* 106 B.R. at 68; *In re Carney,* 47 B.R. at 299; Bowmar, 388–392.

We read this citation as an express affirmation of the formulation provided in *Magosin/Brantz* by the Supreme Court. The other sources cited by the court, *Carney, supra,* and the Bowmar article, recite the same formulation. Application of this formula, as is noted at pages 497–98 *supra,* has the effect of eliminating Bucks' judicial lien in its entirety.

This court is not alone in adopting a formulation of § 522(f)(1) which results in elimination of an entire judicial lien which is not oversecured at the time of a bankruptcy filing. This continues to be the approach taken in the Western District of Pennsylvania, from the time that *Losieniecki, supra;* and *Tanner, supra,* were decided by Chief Judge Cosetti, and *In re Dewyer,* 11 B.R. 551, 552 (Bankr.W.D.Pa.1981), was decided by Judge Washabaugh, to the more recent decisions of Judge Markovitz of that court in *In re Frameli,* 155 B.R. 354, 356–57 (Bankr. W.D.Pa.1993); and *In re Fisher,* 117 B.R. 191, 192–93 (Bankr.W.D.Pa.1990).

Other courts have reached the same conclusion. *See In re Robinson,* 114 B.R. 716, 718–20 (D.Colo.1990); *In re Duden,* 102 B.R. 797, 798–99 (D.Colo.1989); *In re Herman,*

120 B.R. 127, 130–31 (Bankr. 9th Cir.1990); *In re Galvan,* 110 B.R. 446, 449–51 (Bankr. 9th Cir.1990); *In re Osborne,* 156 B.R. 188, 191 (Bankr.W.D.Va.1993); *In re Lapointe,* 150 B.R. 92, 94–95 (Bankr.D.Conn.1993); and *In re Princiotta,* 49 B.R. 447, 450 (Bankr. D.Mass.1985) (Lavien, J.).

Furthermore, a recent Commentary, consistent with the Bowmar article cited by the Supreme Court, concurs with this analysis. M. Howard, *Multiple Judicial Liens in Bankruptcy: Section 522(f)(1) Simplified,* 67 AM.BANKR.L.J. 151, 160–75 (1993).

## D. CONCLUSION

Since the Supreme Court has lent its imprimatur to the *Magosin/Brantz* formula for application of § 522(f)(1), we are certainly not prepared to abandon it. Consequently, we re-affirm the validity of this formula, and the consequent avoidance of Bucks' judicial lien in its entirety by its application to the facts presented in this case.

### ORDER

AND NOW, this 7th day of March, 1994, upon consideration of the arguments of interested counsel in open court on February 10, 1994, and the subsequent Briefs of counsel, relative to the Debtors' Motion to avoid the judicial lien of Bucks Co. Bank & Trust Co. ("Bucks") in this case, it is hereby

ORDERED that the Motion is GRANTED and the judicial lien of Bucks against the Debtors' residence at 27 Carriage Drive, Doylestown, Bucks County, Pennsylvania, County tax parcel number 9–47–150, resulting from the judgment of Bucks against the Debtors in the Court of Common Pleas of Bucks County, Docket No. 92–011516–15–1, is AVOIDED in its entirety.