289 N.J. Super. 167 (1996)
673 A.2d 293
THE PARTY PARROT, INC., PLAINTIFF-APPELLANT,
v.
BIRTHDAYS & HOLIDAYS, INC. T/A THE PARTY PARROT AND WALLACE ECCLESTON, SR., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1996.
Decided March 29, 1996.
*170 Before Judges DREIER, KESTIN[1] and CUFF.
*171 Ephraim T. Jerchower argued the cause for appellant (Pressler & Pressler, attorneys; Mr. Jerchower, on the brief).
Andrew T. Shaw argued the cause for respondents.
The opinion of the court was delivered by DREIER, P.J.A.D.
Plaintiff appeals from an order vacating an earlier execution order that authorized plaintiff to sell defendant's property to satisfy plaintiff's lien and striking the judgment on which plaintiff's lien was based. Plaintiff has a judgment lien on the affected real property. Subject to a factual issue not presented to us or the trial court, defendant may or may not be able to avoid enforcement of the lien by operation of N.J.S.A. 2A:16-49.1. A lien on the real estate enforced by levy, as opposed to the underlying judgment or indebtedness by defendants for a deficiency, is not subject to discharge or complete avoidance under the provisions of the Bankruptcy Code. If unperfected, however, plaintiff's lien was subject to avoidance under the Code and therefore may now be discharged of record.
On July 29, 1991, plaintiff, The Party Parrot, Inc., filed a complaint against defendants, Birthdays & Holidays, Inc. t/a The Party Parrot, and Wallace Eccleston, Sr., alleging default on a note. Apparently plaintiff sold a business to defendants, who in exchange issued a note promising to pay plaintiff in monthly installments beginning February 1991. The court entered a default judgment in the amount of $117,061.68 plus costs against both defendants on December 5, 1991.
On December 6, 1991, plaintiff obtained and filed with the sheriff a writ of execution ordering the sheriff to levy against the corporate defendant's and the individual defendant's personal property, and if the personal property was insufficient to satisfy the debt, then to levy against their real property. The corporate defendant's inventory was sold at a sheriff's sale on January 8, 1992, resulting in approximately $3000. The court then entered *172 an amended judgment against the individual defendant on May 1, 1992 and granted plaintiff's motion for wage garnishment against defendant on August 7, 1992. We are not told whether there ever was a levy under the writ of execution on the real estate. If there was not, the lien remained unperfected and may be discharged under the statute after one year. If the lien had been perfected by a levy, other problems remain.
On August 14, 1992, defendant Wallace Eccleston, Sr. (defendant) filed a petition in bankruptcy under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C.A. §§ 101-1330 ("the Code") and on December 7, 1992, the Bankruptcy Court issued a discharge of debtor, granting defendant relief. On March 1, 1993, the trustee in bankruptcy filed a notice of intention to sell and/or abandon defendant's real property, to which plaintiff did not object.
On March 21, 1994, plaintiff filed a notice of motion in the Bankruptcy Court to avoid the other liens on defendant's property and to vacate the automatic stay of execution so that plaintiff could proceed as judgment lienholder against defendant's assets. Defendant filed an opposing certification. Plaintiff indicated at oral argument in the Law Division that it subsequently withdrew its bankruptcy motion because a mortgage foreclosure action had been commenced against defendant's realty. Defendant "felt that since the foreclosure would have priority over us, we'd follow that"; however, plaintiff stated in its brief that the Bankruptcy Court returned plaintiff's motion order unsigned because defendant had previously been discharged from bankruptcy.
After the mortgage foreclosure action was apparently abandoned, on July 22, 1994 plaintiff moved before the Law Division for leave to proceed with the sale of defendant's interest in his marital home and to enjoin defendant from transferring that interest. Defendant opposed the motion and moved to remove plaintiff's judgment of record. After extended hearings, the judge vacated the order to sell defendant's real estate and struck the judgment pursuant to N.J.S.A. 2A:16-49.1. There was no reference *173 in that motion or order concerning the presence or absence of a levy on the real estate under the outstanding writ of execution.
Plaintiff first asserts that because its lien was not discharged in the bankruptcy proceeding, it had the right to proceed against defendant's property under N.J.S.A. 2A:16-49.1.
N.J.S.A. 2A:16-49.1 provides in relevant part:
At any time after 1 year has elapsed, since a bankrupt was discharged from his debts, pursuant to [the Bankruptcy Code], he may apply, upon proof of his discharge, to the court in which a judgment was rendered against him ... for an order directing the judgment to be canceled and discharged of record.... Where the judgment was a lien on real property owned by the bankrupt prior to the time he was adjudged a bankrupt, and not subject to be discharged or released under the provisions of the Bankruptcy [Code], the lien thereof upon said real estate shall not be affected by said order and may be enforced, but in all other respects the judgment shall be of no force or validity....
[Ibid. (emphasis added).]
This statute "was enacted as an ancillary remedy for discharge of judgments, within the state court system, to assure that judgments intended to be discharged under federal bankruptcy law would not continue to remain on record, thereby requiring payment at some time in the future." In re Arevalo, 142 B.R. 111, 112 (Bankr.D.N.J. 1992) (citing Associates Commercial Corp. v. Langston, 236 N.J. Super. 236, 240-41, 565 A.2d 702 (App.Div.), certif. denied, 118 N.J. 225, 570 A.2d 979 (1989)). But, as plaintiff's judgment was also a lien on defendant's property, the controlling issue is whether or not that lien was "subject to be discharged or released" under the provisions of the Bankruptcy Code, as provided in N.J.S.A. 2A:16-49.1. The statute clears the record as a housekeeping measure unless the judgment was not subject to discharge.
Plaintiff's lien, whether or not enforced by a levy, was not subject to discharge in the bankruptcy proceeding under § 524 of the Bankruptcy Code, which discharged the remaining debt, not the lien. Section 524(a) of the Code indicates that a discharge voids any judgment only "to the extent that such judgment is a determination of the personal liability of the debtor with respect to [a discharged] debt" and operates to foreclose any act to collect *174 "any such debt as a personal liability of the debtor." While a discharge in bankruptcy generally prohibits further in personam actions against the discharged debtor, it does not prohibit creditors from proceeding in rem against the debtor's property. See Johnson v. Home State Bank, 501 U.S. 78, 82-83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66, 74 (1991); Furnival Machinery Co. v. King, 142 N.J. Super. 251, 254, 361 A.2d 91 (App.Div. 1976); 3 Collier on Bankruptcy ¶ 522.27, at 522-92 (15th ed. 1995). Compare New Brunswick Savs. Bank v. Markouski, 123 N.J. 402, 411, 587 A.2d 1265 (1991) (explaining that a valid lien is established by docketing a judgment, and a levy and execution are unnecessary) and In re Arevalo, supra, 142 B.R. at 112 (citing Estate of Lellock v. Prudential Ins. Co. of Am., 811 F.2d 186, 189 (3d Cir.1987) (stating that a valid lien passes through bankruptcy unaffected)) and PNC Bank, Nat. Ass'n v. Balsamo, 430 Pa.Super. 360, 634 A.2d 645, 652-53 (1993) ("[I]f valid liens on property were extinguished along with personal debts and liabilities, this would effect more of a `head start' than a `fresh start,' and such a policy could have the detrimental effect of unreasonably encouraging homeowners and other property owners to file bankruptcy petitions"; citing numerous bankruptcy court decisions to the same effect), appeal denied, 538 Pa. 659, 648 A.2d 790 (1994). Accordingly, plaintiff's lien, whether or not enforced by levy, was not subject to discharge under § 524 in the bankruptcy proceeding.
The bankruptcy trustee, however, had additional powers. Only if plaintiff's lien was levied upon before the bankruptcy filings would the trustee have been precluded from avoiding it by operation of § 544 of the Bankruptcy Code, which provides one method to avoid a judicial lien. Section 544(a)(2) of the Code provides that the trustee, standing in the position of a hypothetical executing judicial lienholder as of the time of the debtor's bankruptcy filing, can avoid certain liens over which she has priority. Priority in this context is determined by state law. In re Silverman, 6 B.R. 991, 995 (D.N.J. 1980); In re Visiting Nurse Ass'n of Western Pa., 143 B.R. 633, 643 (W.D.Pa. 1992), aff'd, 986 F.2d 1410 *175 (3d Cir.1993); Farm Credit Bank of St. Louis v. Lucas, 152 B.R. 244, 246 (C.D.Ill. 1993), rev'd on other grounds, 18 F.3d 413 (7th Cir.1994). Under New Jersey law, "[p]riority among judgment creditors is determined by the order of their liens of execution." In re Silverman, 2 B.R. 326, 330 (Bankr.D.N.J.) (citing Burg v. Edmondson, 111 N.J. Super. 82, 85, 267 A.2d 545 (Ch.Div. 1970), aff'd in part and rev'd in part on other grounds, 6 B.R. 991 (1980)). But "[e]xecution is accomplished only after the creditor delivers the writ to the sheriff and the sheriff actually levies upon the debtor's property." In re Silverman, 6 B.R. at 996. Here, defendant filed his bankruptcy petition on August. The trustee, as a hypothetical executing judicial lienholder, therefore, would have been without power under § 544(a)(2) to avoid plaintiff's interest in defendant's real property if there was a levy before defendant's bankruptcy filing. If, however, no levy had been, plaintiff's lien was subject to complete avoidance and therefore would now be unenforceable and subject to discharge of record.
Other sections of the Bankruptcy Code provide ways in which the bankruptcy trustee or the debtor can avoid certain transfers, but none would have been available in the present case. Plaintiff's lien, having been established eight months before the bankruptcy petition, was not a preference under § 547[2]; it was not a fraudulent conveyance under § 548; nor was it avoidable under § 506(d). See Dewsnup v. Timm, 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903, 911 (1992).
Lastly, under § 522 of the Code, a debtor can avoid a prepetition judicial lien to the extent that he can show that such lien impairs his exemption right whether or not there has been a levy. 11 U.S.C.A. § 522(f)(1); In re Tash, 80 B.R. 304, 306 (Bankr. *176 D.N.J. 1987). This section, as in effect during defendant's bankruptcy, provided in relevant part:
[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is (1) a judicial lien....
[Ibid.]
Defendant claimed a $7500 maximum homestead exemption, to which plaintiff did not object.[3] Therefore, defendant would have been able to avoid plaintiff's judicial lien to the extent that it impaired defendant's $7500 homestead exemption.
Prior to the 1994 amendment to § 522(f), the courts used various methods to determine whether or not, and to what extent a debtor could avoid a judicial lien under § 522(f)(1). See Collier, supra, ¶ 522.29, at 522-97 to 100 (listing some of the various approaches courts have employed). The most recent pre-amendment controlling authority on the matter, In re Menell, 37 F.3d 113 (3d Cir.1994), resolved this issue for our jurisdiction.
In In re Menell, the debtor moved post-discharge in the bankruptcy court under § 522(f)(1) to avoid a judicial lien on property abandoned by the trustee. Id. at 114. The court declined to adopt the line of decisions of other jurisdictions that allowed complete lien avoidance under § 522(f)(1) if the debtor had at least some equity in the property. Id. at 114. Relying on what it termed the plain language of § 522(f)(1), the court instead held that lien avoidance is limited to the value of the debtor's equity in the property at the time of his bankruptcy filing, which in that case was less than the $7500 homestead exemption. Id. at 115-116. To determine the value of the debtor's equity, the court subtracted the amount of the other unavoidable liens from the fair market value of the property determined as of time of the bankruptcy filing. Id. at 116. Although the Third Circuit opinion *177 did not expressly acknowledge what the result would be if the amount of the debtor's equity exceeded the value of the $7500 homestead exemption, the Bankruptcy Court decision had recognized that the debtor could avoid the lien only to the lesser of the amount of the value of his equity or of the amount of his homestead exemption. 160 B.R. 524, 525-26 (Bankr.D.N.J. 1993); see also In re Arevalo, supra, 142 B.R. at 115 (holding that debtor could not avoid a judicial lien where, after accounting for unavoidable liens and mortgages, he had no equity in the property, and therefore, no interest on which to avoid the judicial lien); cf. In re Abrahimzadeh, 162 B.R. 676, 680 (Bankr.D.N.J. 1994) (decided after the bankruptcy decision in In re Menell, but before the Third Circuit decision; indicating that avoidance of a judicial lien is limited to the lesser of the value of the debtor's $7500 homestead exemption or the value of the deficiency that remains after subtracting all liens from the value of the property).
In the case before us, defendant's bankruptcy petition appraised his real estate at $150,000; his answers to discovery set its value at $100,000; the trustee claimed it was worth only $50,000 because it needed $35,000 in improvements and was subject to $29,000 in mortgages or unavoidable liens. Even accepting the trustee's $50,000 appraisal and subtracting the additional $29,000 in liens or mortgages, $21,000 remained. Because defendant and his wife own the property as tenants by the entirety, defendant's interest in the property is one-half of its value, which would be $10,500, even before any adjustment for the outstanding right of survivorship.[4] Under In re Menell, supra, defendant would have been entitled to avoid $7500 of the judicial lien, i.e., the amount of his homestead exemption, since his equity in the property after considering the unavoidable liens was greater than his allowable $7500 exemption. He would not, however, have been entitled to avoid plaintiff's lien in its entirety. The actual amounts due the *178 parties could, of course, be established upon a sale of defendant's interest which may yield more or less than the trustee's estimate.
Defendant's reliance on Associates Commercial Corp. v. Langston, supra, 236 N.J. Super. 236, 565 A.2d 702 (App.Div.), certif. denied, 118 N.J. 225, 570 A.2d 979 (1989), a pre-Menell case, is misplaced. Langston concerned a debtor who filed for bankruptcy under Chapter 13, dealing with the adjustment of an individual's debts (wage earner plan), where the debts are treated similar to those under Chapter 7, dealing with liquidation. Id. at 238, 565 A.2d 702. Langston noted that a debtor could avoid judicial liens to the full extent of her exemptions and concluded that: "Because defendant's equity in her property was less than $7500, her entire interest was exempt under the Bankruptcy Code, 11 U.S.C. § 522(d)(1). Consequently, the lien on her property could have been discharged under § 522(f)(1)."[5]Id. at 240, 565 A.2d 702. Langston is not controlling as it predates In re Menell, which concluded that a debtor cannot completely avoid a lien simply because her equity in the property is less than her allowable exemption.
Under our analysis, the trial court must first determine whether or not there was a levy on the real estate. If there had been a levy, the trustee lacked the power to avoid the lien, and defendant, therefore, may avoid only that part of the lien that impaired his *179 exemption rights. If there had been no levy, and plaintiff's lien was subject to the trustee's avoidance power under § 544, the lien is now unenforceable.
Plaintiff next asserts that the trial court misapplied the relevant New Jersey law and Bankruptcy Code provisions by finding that plaintiff's only recourse against defendant's property was to challenge the trustee's abandonment of the property in the bankruptcy proceeding. This abandonment, however, operated in favor of plaintiff, not against it. Under § 554(a) of the Code, a trustee may abandon any interest in a debtor's property when the trustee considers that interest burdensome or of inconsequential value and benefit to the estate. When a trustee abandons a debtor's property under Chapter 7, the property reverts to the debtor as if no bankruptcy petition had been filed and ceases to be part of the bankruptcy estate. In re Henry, 173 B.R. 878, 883 n. 11 (Bankr.D.N.J. 1993); In re Lansberry, 177 B.R. 49, 56 (Bankr. W.D.Pa. 1995); In re Dewsnup, 908 F.2d 588, 590, 590-93 (10th Cir.1990), aff'd, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). However, after this, "the lienors are free to proceed against [the property] just as they normally would under applicable state law." In re Flamand, 78 B.R. 644, 645 (Bankr.D.R.I. 1987) (quoting In re Polumbo, 271 F. Supp. 640, 643 (W.D.Va. 1967)).
As noted earlier, if plaintiff is an executing judicial lienholder with an interest superior to that of the trustee, plaintiff's lien, as opposed to the underlying debt, was unaffected by the bankruptcy. A "pre-petition lienholder has no affirmative duty to preserve its lien during the debtor's bankruptcy proceedings except to defend against the debtor's or the trustee's attempts to avoid the lien." PNC Bank, Nat. Ass'n v. Balsamo, supra, 634 A.2d at 653. Plaintiff's assertion of its continuing interest in the property was therefore timely.
Finally, we must determine whether or not plaintiff may require the trial court to force a sale of defendant's property if in *180 fact plaintiff had levied. The court on remand must weigh the conflicting interests and respective rights of the plaintiff creditor, the debtor, and the nondebtor spouse who resides on the premises. ESB, Inc. v. Fischer, 185 N.J. Super. 373, 380-82, 448 A.2d 1030 (Ch.Div. 1982) (ordering nondebtor spouse to pay creditor one-half of imputed rental value of house rather than forcing a sale of debtor husband's interest as a tenant by the entirety, noting that the nondebtor spouse's payments would be credited against the outstanding amount of the judgment and the levying judgment creditor would retain its priority); In re Youmans, supra, 117 B.R. at 121 (leaving for remand question of whether or not to order a sale under § 363(h) of the Code of entireties property where the bankruptcy trustee succeeded to the debtor spouse's interest in the spouses' homestead, and noting that the "question usually boils down to whether the benefit to the estate of sale outweighs any detriment to the nondebtor spouse"). Especially because defendant has indicated that since the filing of his bankruptcy petition he has paid the mortgage arrearages so that the property is no longer in foreclosure,[6] the status and the date of the other secured liens or mortgages on defendant's property must be thoroughly reviewed to assess their interest in defendant's property and whether there are priority or circuity problems. See Pulawski S. & L. Ass'n v. Aguiar, 174 N.J. Super. 42, 48-50, 415 A.2d 365 (Ch.Div. 1980).
The summary judgment is reversed. The matter is remanded to the trial court for the court to conduct such further proceedings as are appropriate to determine the enforceability of the lien, any exemption rights of defendant and the appropriate remedies to be afforded plaintiff.
NOTES
[1] Judge Kestin did not originally participate in this case, but has, with the consent of counsel, been added to the panel deciding the matter.
[2] As plaintiff recorded its judgment and delivered the writ of execution to the sheriff outside the ninety-day preference period, plaintiff's lien could not have been voided as a preference. See § 547(e)(2) and (e)(1)(A); In re Italiano, 66 B.R. 468, 471 (Bankr.D.N.J. 1986); In re Jordan, 5 B.R. 59, 61 (Bankr.D.N.J. 1980).
[3] The single petitioner's exemption right was increased from $7500 to $15,000, applicable to cases commenced on or after October 22, 1994, approximately two years after defendant filed his bankruptcy proceeding and received his discharge. 11 U.S.C.A. § 522(d)(1) (as amended by Pub.L. 103-394, 108 Stat. 4112).
[4] See In re Youmans, 117 B.R. 113, 117-18 (Bankr.D.N.J. 1990) (ascribing no value to a debtor spouse's survivorship right after sale). We question this valuation rule under King v. Greene, 30 N.J. 395, 153 A.2d 49 (1959).
[5] Section 522(f) has been amended, as noted earlier, by the Bankruptcy Reform Act of 1994, Pub.L. 103-394, 108 Stat. 4132 (1994), but the amendment does not apply to cases commenced under the Code before October 22, 1994. Id., 108 Stat. at 4150. The amended version of that section sets forth an arithmetic formula for determining whether a lien impairs a debtor's exemption. Under that formula, a debtor can avoid a judicial lien, "other than a judicial lien that secures a debt," if the value of the debtor's equity in the property, without considering any of the liens, is less than the sum of: the lien; all other liens on the property; and the amount of the exemption the debtor would have been able to claim if there were no liens on the property. Id., 108 Stat. at 4132. The amended section might therefore yield different results for cases commencing under the Code on or after October 22, 1994 with facts identical to those of In re Menell or of the present case. See Collier, supra, ¶ 522.29, at 522-101; see, e.g., In re Jones, 183 B.R. 93, 96 (Bankr.W.D.Pa. 1995).
[6] Defendant's payments on the prior mortgage even after the bankruptcy increases plaintiff's equity protected by its lien. See Dewsnup v. Timm, supra, 502 U.S. at 417, 112 S.Ct. at 778, 116 L.Ed.2d at 911; cf. Johnson v. Home State Bank, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66, 75 (1991) (indicating that a mortgagee has a right to the proceeds of the foreclosure sale to satisfy the mortgage interest that survived the debtor's bankruptcy discharge).