825 A.2d 566 (2003)
361 N.J. Super. 331
Cho Hung BANK, Plaintiff-Respondent,
v.
Ki Sung KIM and Kwi Ryung Kim, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 2003.
Decided June 25, 2003.
*567 Robert A. Recio, Hackensack, argued the cause for appellants (Greiner, Gallagher & Cavanaugh, attorneys; Mr. Recio, on the brief).
Samuel Reiken, Parsippany, argued the cause for respondent.
Before Judges KESTIN,[1] FALL and LANDAU.
The opinion of the court was delivered by LANDAU, J.A.D., retired and temporarily assigned on recall.
This is an appeal from an order of the Chancery Division, Bergen County, dated June 21, 2002, denying a R. 4:50-1 motion *568 filed by defendants Ki Sung Kim and Kwi Ryung Kim to vacate an amended default judgment for foreclosure entered on behalf of plaintiff Cho Hung Bank on March 19, 2002.[2] The judgment foreclosed "the mortgage premises described in the complaint" filed under Docket No. F-4148-00 by plaintiff against defendants respecting premises designated as 39 Brodil Court, Closter, New Jersey, Lot 35, Block 247. The mortgage described in the complaint was dated February 10, 1993, and secured a $150,000 note executed by defendants. Several other mortgages on the same property, securing an aggregate sum of $560,000 on notes between the same parties, were expressly subordinated to the February 1993 mortgage. The latter mortgage recites that the mortgagors were "Ki Sung Kim and Kwi Ryung Kim, his wife, individuals residing at 39 Brodil Court, Closter, New Jersey 07624," but also included an assignment of rents clause "[i]f the property is a rental property."
Supported by certification, defendants' motion to vacate asserted that the mortgaged premises consisted of a single parcel residence occupied by defendants and their four children, and that the Fair Foreclosure Act (FFA)[3] had been violated by plaintiff. Their moving papers pointed out that the Foreclosure Unit had initially issued a return notice addressing inter alia, plaintiff's failure to comply with the FFA, presumably by reason of the property's apparent residential nature, and the complaint's omission of the representation of compliance with the Act required by N.J.S.A. 2A:50-56(f). Subsequently, plaintiff's then counsel filed a certification, essentially stating that the FFA was inapplicable in that "this is rental property owned by the debtor, which was security for a commercial loan made to the defendants' business," and that, "[i]t is not owner-occupied residential property." The property was cleared for foreclosure by the Foreclosure Unit, and, as noted above, the subject amended foreclosure judgment was entered on March 19, 2002, reciting an amount due that substantially exceeded the amount requested in plaintiff's initial complaint and contained in the earlier foreclosure judgment of March 19, 2001.
Defendants' motion also argued that the judgment was void ab initio because the complaint and foreclosure action filed in March 2000, violated the automatic stay provisions of 11 U.S.C.A. Sec. 362(a), contended to be in effect until their then pending bankruptcy case, initiated in 1999, was closed on January 25, 2002.
The motion judge rejected the bankruptcy stay argument as inapplicable under the facts, because defendants received a discharge on December 10, 1999. Recognizing that defendants had not set forth their ability to satisfy the mortgage obligations, the judge did not presume to resolve the factual issue of whether defendants resided in the mortgaged premises. Rather, assuming for the purposes of the motion that defendants did reside in the subject property, she concluded that plaintiff had substantially complied with the purposes of FFA in any event, and that, coupled with the absence of defendants' demonstrated ability to pay the secured obligations or to dispute those obligations, and their sophistication in business and commercial matters, there was an insufficient basis to afford R. 4:50-1 relief from judgment.
We reverse and remand because there were sufficient material defects in the *569 course of the foreclosure proceeding and the resulting default judgment to require that the judgment be vacated under R. 4:50-1.

STANDARD OF REVIEW
R. 4:50-1 relief from judgment is not to be granted lightly. Ordinarily, denial of such relief will be left undisturbed absent a clear abuse of discretion. In re Guardianship of J.N.H., 172 N.J. 440, 473, 799 A.2d 518 (2002). Relief is more liberally granted, however, when the application is to vacate a default judgment. Marder v. Realty Construction Co., 84 N.J.Super. 313, 318, 202 A.2d 175 (App. Div.), aff'd, 43 N.J. 508, 205 A.2d 744 (1964). If a judgment is void and, therefore, unenforceable, it is a particularly worthy candidate for relief (R. 4:50-1(d)) provided that the time lapse is not unreasonable and an innocent third party's rights have not intervened. See Berger v. Paterson Veterans Taxi Serv., 244 N.J.Super. 200, 581 A.2d 1344 (App.Div.1990); Pressler, Current N.J. Court Rules, comment R. 4:50-1(d) (2003), and cases there cited.
Neither egregious time lapse nor rights of third parties are a bar to relief in the present case. We therefore examine first whether, as argued by defendants, the judgment was void ab initio because the foreclosure suit was initiated while an automatic bankruptcy stay was in effect.

THE BANKRUPTCY FILING
Defendants filed for Chapter 7 bankruptcy relief in the Southern District of New York on August 23, 1999, thus initiating the automatic stay provisions of 11 U.S.C.A. § 362(a)(1) and (4)[4] against commencement or continuation of actions to recover pre-filing debts or claims, and enforcement of liens against property of the estate. Relief from the automatic stay may be secured upon application to the Bankruptcy Court to the extent permitted by 11 U.S.C.A. § 362(d). Significantly, on January 18, 2000, after defendants received their discharge in the bankruptcy action on December 10, 1999, plaintiff deemed it necessary to secure such relief from the stay order in order to foreclose another of defendants' properties, but did not apply for similar relief from the stay as it applied to the 39 Brodil Court mortgage.
Absent such an order of relief, or Bankruptcy Court action approving abandonment or exemption of the subject property, defendants correctly assert that the stay was in effect until the bankruptcy case closed in January 2002. The motion judge relied upon 11 U.S.C.A. section 362(c)(2)(C) in concluding that the discharge of the debtors in the bankruptcy action in 1999, resulted in lifting the automatic stay. That reliance was misplaced, however, in that section 362(c)(1) states: "[e]xcept as provided in subsections (d), (e), and (f) of this section [not here applicable](1) the stay of an act against property of the estate under subsection (a) of this *570 section continues until such property is no longer property of the estate. ..." (Emphasis provided.)
There is sound reason for the difference in treatment. The trustee and creditors interested in the estate are rightly entitled to have notice, by way of application to the Bankruptcy Court, of a request to lift the stay, particularly where it is not readily determinable whether the bankrupt's equity exceeds the amounts secured by the mortgaged property, after allowance of any statutory exemption. Adequate protection to a lien-holder against possible diminution in the value of the secured property is provided by its opportunity to move for lifting the stay, as plaintiff did with another of defendants' mortgaged properties after discharge.
All proceeds in excess of the secured creditors' interest, of course, belong to the estate. Indeed, even lifting the stay does not constitute an abandonment of the property. Catalano v. C.I.R., 279 F.3d 682, 686 (9th Cir.2002).
As pointed out in Epstein, Nichols & White, Bankruptcy, § 3-1, at 63 (1992), "any action that violates the stay is void or voidable so that any non-bankruptcy consequences diluting the rights of the debtor or the estate are deemed ineffective, including the transfer of rights in property that the stay protects."
It is, of course, true that the 1999 discharge of defendants in their Chapter 7 proceeding relieved them of any further personal debt under the instruments securing their obligations, while preserving plaintiff's secured rights in rem against the mortgaged property. Party Parrot, Inc. v. Birthdays & Holidays, Inc., 289 N.J.Super. 167, 174, 673 A.2d 293 (App.Div.1996). However, as we will discuss more fully below, the record was and is anything but clear as to the actual extent of defendants' obligations, both at the time of entry of default judgment and when the R. 4:50-1 motion was decided.
It suffices to say for purposes of our resolution of the bankruptcy stay issue, that the amount set forth in the judgment, although not recoverable against defendants personally, constituted the measure for determining whether there remained an interest of the estate in the property over and above defendants' relatively modest statutory exemptions. To the extent that the amount of the judgment was properly open to question, the trustee and creditors should have been made aware, by way of formal application in the bankruptcy court, that a property with possible estate equity might be foreclosed and sold to third parties.
Absent abandonment of the property, or action by the Bankruptcy Court to lift the stay, such as that in its January 2000 order, it remained in effect until the bankruptcy case was closed in January 2002.
We acknowledge that while "the dominant, general rule is that any act or occurrence that violates the stay is void ab initio," Epstein, Nichols & White, Bankruptcy, supra, § 3-32, page 155, a "handful of courts," ibid., page 160, have held that violations of the automatic stay are merely voidable. Citing In re Schwartz, 954 F.2d 569, 571 (9th Cir.1992), the treatise concludes that "the voidable rule lacks any substantial reason or policy to support it...."
As we believe that the motion judge mistakenly relied upon § 362(c)(2)(C) in concluding that the stay was no longer in effect, a reasonable deference to the bankruptcy statute and to prevailing federal court interpretations would render void the judgment from which relief was sought. In turn, this would suggest applicability of R. 4:50-1(d). Even if merely *571 voidable, however, the questionable reliability of the dollar amount in the judgment should have precluded its entry, and dictated the grant of R. 4:50-1 relief to reopen the judgment.
Another option in the R. 4:50-1 proceeding would have been to employ the method ordered in G.E. Capital Mortgage Services, Inc. v. Weisman, 339 N.J.Super. 590, 773 A.2d 122 (Ch.Div.2000). There, the court directed the mortgagee to institute a new notice of intention to the mortgagors. In the present case, as the bankruptcy matter was closed in January 2002, that would have had the effect of avoiding any issue respecting operation of the bankruptcy stay, as well as affording opportunity to clarify the strangely inconsistent and evidentially unsatisfactory multiple assertions of the amounts due under the subject mortgage.
We turn to the latter issue.

ADEQUACY OF PROOF OF AMOUNTS DUE
As the Kims' default in payments was not contested, and as their Chapter 7 discharge had already relieved them of personal liability, the amount of debt secured by the 39 Brodil Court property might initially appear to be of little consequence in the R. 4:50-1 proceeding. As noted earlier, however, the potential for equity in the house could possibly have been of importance to the bankruptcy estate and, to the extent of their statutory exemption or ability to persuade a relative or benefactor to cure default, possibly to the Kims as well.
Judgment by default for foreclosure was first entered in this case on March 19, 2001, exactly one year prior to the amended judgment which was the subject of the R. 4:50-1 application. The first judgment was supported by an affidavit of amounts due executed by "Seung Hoon Jung, Assistant Vice President" stating that, as of September 12, 2000, "defendants are indebted to the Cho Hung Bank in the amount of $378,179.55." This included $279,506.77 in principal, interest of $96,894.84, and $1,778.34 in advances for taxes, insurance "and other sums due." There was no specific support to establish how the referenced indebtedness was calculated. A reference to the complaint and the subject mortgage shows that the latter secured a $150,000 note with 6.71 percent interest, and that there were two separate subordinated mortgages on the same property, securing $560,000 in consolidated debt entered into between the parties in 1998, five years before execution of the February 10, 1993 mortgage.
While reciting subordination of the two prior mortgages, the 1993 mortgage stated that it also secured "any more debts now or in the future owed by the Mortgagor to the Mortgagee." Presumably, this would include the debts secured by those earlier mortgages if they were in default, as well as unstated other debts. Plaintiff's appellate brief makes clear that the default by the Kims was on "various loans made to them by the Bank, which loans were secured by the Property [i.e., 39 Brodil Court], and other properties, personal guarantees and other collateral."
On March 19, 2002, on plaintiff's application, a default judgment for foreclosure was entered in the amount of $946,588 together with interest and counsel fees of $7,500. This increase of nearly $600,000 over the prior judgment was made under circumstances that, even for a default judgment, should have invited inquiry in the R. 4:50-1 application.
The motion to amend judgment was supported by a certification of proof of amount due made only by plaintiff's attorney. While R. 4:64-1 allows entry of judgment *572 upon certification, this is so "unless the court other requires." Apart from the marked deviation in amount from the certification submitted only one year earlier by a bank officer, the attorney's certification, although reciting both authorization to make the certification and possession of complete knowledge of the amount due for principal and interest on the mortgage, set forth a sum due of $788,088.13. The latter sum was the subject of the motion to amend judgment, but, oddly, the supporting schedule recited an aggregate sum due of $946,588.66. That aggregate, it appears from the schedule, consisted of $158,500.53 then due by way of principal and interest under the "first mortgage" [presumably the 39 Brodil Court property], and $788,088.13 of principal and interest then due under the "second and third mortgage." The latter reference is to the two mortgages securing the $560,000 of debt consolidated in the 1998 note. Inasmuch as the 1993 mortgage purports to secure not only the debt secured by the two subordinated mortgaged, but various other obligations, some of which were otherwise secured (and otherwise foreclosed), we believe that the cumulative circumstances cried out for the court to require, as authorized by R. 4:64-2, proof of the amount due under the mortgage beyond the mere certification by counsel. Indeed, R. 4:64-2 requires that the moving party produce the original mortgage, evidence of indebtedness,... and any other original document (or certified true copy) upon which the claim is based.
Additionally, as the amended default judgment was in an amount different then that set forth in the complaint, the judgment entered is questionable under R. 4:43-2(c) (judgment must conform with pleadings), even were the truncated schedule annexed to the attorney's certification and complaint deemed otherwise adequate.
In the present case, we recognize as appropriate the procedure recommended in Weinstein Law of Mortgages, Vol. 30A, New Jersey Practice Series, § 31.16:
The affidavit of proof is made by the plaintiff or an authorized officer or agent of the plaintiff, setting forth facts admissible in evidence and to which deponent is competent to testify. Plaintiff's attorney should not normally sign the proof of amount due on behalf of the foreclosing mortgage unless the attorney has personal knowledge of the lender's finances. The affidavit of proof should disclose the amount due on the mortgage and any payments made on account or other credits, and the interest due, and the net amount due the plaintiff. There may be included any advances for taxes by the mortgagee or other expenditures properly incurred by the mortgagee.
Pursuant to Rule 1:4-4(c), an affidavit or certification of amount due may be filed with a facsimile (faxed) signature, if the attorney offering it certifies that the affiant acknowledged the genuineness of the signature and that the document or a copy with an original signature will be filed if requested by the court or a party.
A schedule is attached to the affidavit of proof summarizing the amount due, payments or credits, interest calculation and the net balance due.
The schedule should contain a breakdown or itemization of the amount due. Thus, the schedule should itemize: (a) principal due at time of default; (b) interest (specifying the period with "from" and "to" dates) and the rate used; (c) late charges (not beyond the filing of the complaint) setting forth the number of charges and amount of each charge; (d) advances (separately itemizing amounts paid for taxes, insurance, *573 property maintenance and the like); (e) escrow advances (separately itemizing what the advances were used for); and (f) the total or net balance due. Some attorneys attach a transcript of plaintiff's books of account relating to the mortgage.
In summary, then, it is our view that regardless of the bankruptcy stay and FFA issues also raised on appeal, the amount secured by the 1993 mortgage should have been the subject of more complete proof before entry of the amended judgment of foreclosure and order for execution by sheriff's sale, and that this constituted sufficient cause for relief under R. 4:50-1(f).

THE FAIR FORECLOSURE ACT
Defendants claim that a certification to the court by plaintiff's attorney stating the property in question "is not owner-occupied residential property" formed the basis for the initial foreclosure judgment, thus apparently freeing it from requirements of the FFA. Defendants later vigorously disputed this representation by certification that they and their children had long resided at 39 Brodil Court and continued to do so. We have previously noted that each of the mortgages presumably prepared by plaintiff recited that defendants reside at that address.
Thus, when the mortgage foreclosure judgment(s) were entered, there was at least a factual question present as to whether 39 Brodil Court was defendants' place of residence; although the 2001 judgment and the amended judgment appear to have been entered in reliance upon the contrary certification of plaintiff's attorney. We disagree with plaintiff's suggestion that the underlying business purpose of a loan secured by a mortgage on a residence occupied by the mortgagor frees the mortgagee from the need to comply with FFA. Unlike N.J.S.A. 2A:50-2.3 (the Mortgage Foreclosure Act, N.J.S.A. 2A:50-2 to 50 -10), FFA does not exclude debts secured for business or commercial purposes from its provisions. To the contrary, N.J.S.A. 2A:50-55 expressly states, in pertinent part, that "[t]his act shall apply to all residential mortgages whenever made, which have as their security such a residence in the State of New Jersey, provided that the real property which is the subject of the mortgage ... shall be ... occupied by the debtor or a member of the debtor's immediate family as the debtor's or member's residence at the time the loan is originated." Clearly, the legislative language protects the interests of a homeowner whose residence is mortgaged, without reference to his or her reasons for the mortgage. We are not free to deviate from an unambiguous statute. FFA is applicable to defendants' property, if it was their residence when this secured loan originated.
Although assuming, for purposes of the motion, that FFA was applicable, the motion judge concluded that plaintiff had substantially complied with the Act. The judge also found it significant, for purposes of a R. 4:50-1 motion, that defendants were sophisticated business persons and that they had asserted no ability to satisfy the secured obligations.
The legislative objective of FFA expressed in N.J.S.A. 2A:50-54 is to give homeowners "every opportunity to pay their home mortgages" and to benefit lenders "when residential mortgage debtors cure their defaults." In pursuit of this objective, N.J.S.A. 2A:50-56 sets forth in considerable detail the steps required of a lender seeking to accelerate maturity and foreclose a residential mortgage upon the *574 debtor's failure to perform an obligation under the mortgage.[5]
Compliance with N.J.S.A. 2A:50-56 must be set forth in the pleadings of a foreclosure complaint.
Contents of the Notice of Intention (NOI) required by N.J.S.A. 2A:50-56(a) are set forth in sub-paragraph 56(c). Plaintiff's notice stated:
This letter will serve to advise you that I have been contacted by the bank and you have been directed to institute foreclosure proceedings secured by owned by you at 39 Brodil Court, Closter, Bergen County, N.J.
Please be advised that pursuant to the N.J. Fair Foreclosure Act that you have the right to bring this mortgage current at any time during the proceedings. You are further advised that the proceedings will commence thirty (30) days following this notice. Upon you[r] demand, the bank must advise you of the amount necessary to bring the mortgage current. Therefore, if you wish an accurate accounting of the amount that is needed to bring the loan current at any point during the proceedings, you must request it.
This letter shall further serve as notice to you that the bank intends to commence foreclosure proceedings, the general intent of which is to foreclosure your interest in the property located at 39 Brodil Court[.] ...
Referring to plaintiff's NOI, the motion judge said,
I am satisfied that it was incomplete but sufficient here because it looked to the purpose of the act. The purpose of the act is to give homeowners, residential mortgage holders the opportunity to cure a default, to let them know of their rights and remedies, and what's out there. That's the intent of the Legislature and we have never been a judicial system that goes on total complete technicality, just look at our rule and pleadings.
What do we do here? Obviously a highly sophisticated business individual with numerous property, commercial dealings, different kinds of bankruptcies represented by counsel throughout. I think it would be turning the purpose of the Fair Foreclosure Act on its head to say under these circumstances lack of total technical compliance, especially when the subsection deals with somebody or out to help somebody not sophisticated.
While we agree that plaintiff's notice was incomplete, we find nothing in the statute to indicate that its notice requirements may be rendered inapplicable when a motion judge concludes from the filings that one of the mortgagors is "sophisticated."
Moreover, addressing the extent to which the NOI might be deemed in substantial compliance with FFA, we believe it falls short even upon such subjective analysis. Given the multiple obligations secured by the mortgage, the notice letter's suggestion that defendants ask the plaintiff bank for advice as to what was necessary to bring the mortgage current was of dubious value. Exemplifying the inadequacy and probable futility of that suggestion are the widely conflicting amounts of obligation set forth in the Seung Hoon Jung certification, plaintiff's counsel's certification in support of the amended judgment, and the uncertified amount set forth in the schedule which appears to have formed the actual basis for that judgment.
*575 Further, as defendants argue, there was no "clear and conspicuous" statement of the nature of the default claimed, a factor of more than theoretical importance when multiple separate obligations are involved. Other deficiencies were absence of proof of the certified or registered mailing of the NOI; absence of identification of the specific obligation in issue; absence of name and phone number of person to whom payment could be made; and absence of the notices made requisite by subsection (c)(8), (9), (10), and (11) of the NOI provision.
Finally, the record before us discloses no compliance with N.J.S.A. 2A:50-58(a)(1) which requires, in apparently uncontested foreclosure actions, that the lender provide the debtor with a notice, mailed at least fourteen calendar days prior to the submission of proper proofs for entry of a foreclosure judgment, advising that, absent the debtor's submission by registered or certified mail of a certification of likelihood of ability to cure default within forty-five days, final judgment will be entered.
The Legislature has signaled the importance with which it regards the foregoing rights of the debtor under FFA by declaring that even waivers by the debtor of rights under that Act are "against public policy, unlawful, and void...." If the debtor cannot waive the statute, we would hesitate to endorse its judicial waiver or modification in any case, but surely not one in which final judgment has been rendered in the face of so many failures to comply with statutory requirements.
If defendants were indeed residents of 39 Brodil Court when this mortgage obligation was incurred, FFA was applicable, and R. 4:50-1 relief should have been afforded.
Were compliance with FFA the sole issue on appeal, we would have reversed and remanded to the Chancery Judge only for resolution of the factual issue presented by counsel's contested certification that defendants did not reside in the mortgaged premises, and for further proceedings consistent with that factual determination. In light of our holdings respecting the bankruptcy stay and the uncertainty of the amount set forth in the amended judgment, however, we must reverse the order denying R. 4:50-1 relief, dismiss the foreclosure judgment, and remand with the following directions.
The Chancery Judge shall resolve the debtor-residence issue by plenary hearing or by stipulation of the parties. If defendants' non-residence is found, plaintiff shall be permitted forthwith to proceed with amended foreclosure proceedings upon proper proof of amounts due under the mortgage.
If defendants' residential occupancy of the premises is determined to have existed at the time of the mortgage obligation, then the FFA is applicable. We direct that, as in G.E. Capital Mortgage Services, supra, a new NOI be forwarded to defendants by certified mail, which notice shall contain all the information required by N.J.S.A. 2A:50-56.
Depending upon the defendants' response or absence of response, the foreclosure action shall proceed in the ordinary course under FFA. We note that, by reason of the final closing of the bankruptcy case, there is no longer a pending stay issue.
We cannot conclude without recognizing, as the motion judge did, that defendants have not challenged the existence of a default. Moreover, their asserted reliance upon the pending bankruptcy matter to dispose of the foreclosure proceedings is scarcely subject to characterization as mistake or excusable neglect. They may well *576 be merely engaged in staving off the inevitable.
Nonetheless, we may not lightly ignore the effect of a Federal Bankruptcy Court stay order, nor endorse a judgment in an amount of doubtful reliability that could affect the rights of non-parties without notice; nor can we authorize wholesale deviation from unambiguous statutory mandates of FFA, particularly when the legislature has expressed a policy against waiver of its mandated notice requirements.
Reversed and remanded for further proceedings consistent herewith.
APPENDIX AN.J.S.A. 2A:50-56
Written notice of intent to foreclose; contents
a. Upon failure to perform any obligation of a residential mortgage by the residential mortgage debtor and before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation and commence any foreclosure or other legal action to take possession of the residential property which is the subject of the mortgage, the residential mortgage lender shall give the residential mortgage debtor notice of such intention at least 30 days in advance of such action as provided in this section.
b. Notice of intention to take action as specified in subsection a. of this section shall be in writing, sent to the debtor by registered or certified mail, return receipt requested, at the debtor's last known address, and, if different, to the address of the property which is the subject of the residential mortgage. The notice is deemed to have been effectuated on the date the notice is delivered in person or mailed to the party.
c. The written notice shall clearly and conspicuously state in a manner calculated to make the debtor aware of the situation:
(1) the particular obligation or real estate security interest;
(2) the nature of the default claimed;
(3) the right of the debtor to cure the default as provided in section 5 of this act.
(4) what performance, including what sum of money, if any, and interest, shall be tendered to cure the default as of the date specified under paragraph (5) of this subsection c;
(5) the date by which the debtor shall cure the default to avoid initiation of foreclosure proceedings, which date shall not be less than 30 days after the date the notice is effective, and the name and address and phone number of a person to whom the payment or tender shall be made;
(6) that if the debtor does not cure the default by the date specified under paragraph (5) of this subsection c., the lender may take steps to terminate the debtor's ownership in the property by commencing a foreclosure suit in a court of competent jurisdiction;
(7) that if the lender takes the steps indicated pursuant to paragraph (6) of this subsection c., a debtor shall still have the right to cure the default pursuant to section 5 of this act, but that the debtor shall be responsible for the lender's court costs and attorneys' fees in an amount not to exceed that amount permitted pursuant to the Rules Governing the Courts of the State of New Jersey;
(8) the right, if any, of the debtor to transfer the real estate to another person subject to the security interest and that the transferee may have the right to cure the default as provided in this act, subject to the mortgage documents;

*577 (9) that the debtor is advised to seek counsel from an attorney of the debtor's own choosing concerning the debtor's residential mortgage default situation, and that, if the debtor is unable to obtain an attorney, the debtor may communicate with the New Jersey Bar Association or Lawyer Referral Service in the county in which the residential property securing the mortgage loan is located; and that, if the debtor is unable to afford an attorney, the debtor may communicate with the Legal Services Office in the county in which the property is located;
(10) the possible availability of financial assistance for curing a default from programs operated by the State or federal government or non-profit organizations, if any, as identified by the Commissioner of Banking. This requirement may be satisfied by attaching a list of such programs promulgated by the commissioner; and
(11) the name and address of the lender and the telephone number of a representative of the lender whom the debtor may contact if the debtor disagrees with the lender's assertion that a default has occurred or the correctness of the mortgage lender's calculation of the amount required to cure the default.
d. The notice of intention to foreclose required to be provided pursuant to this section shall not be required if the debtor has voluntarily surrendered the property which is the subject of the residential mortgage.
e. The duty of the lender under this section to serve notice of intention to foreclose is independent of any other duty to give notice under the common law, principles of equity, State or federal statute, or rule of court and of any other right or remedy the debtor may have as a result of the failure to give such notice.
f. Compliance with this section shall be set forth in the pleadings of any legal action referred to in this section. If the plaintiff in any complaint seeking foreclosure of a residential mortgage alleges that the property subject to the residential mortgage has been abandoned or voluntarily surrendered, the plaintiff shall plead the specific facts upon which this allegation is based.
NOTES
[1] Judge Kestin did not participate in the argument of this case. He has been added with consent of all counsel.
[2] Although the motion judge denied defendants' motion to stay execution, this court granted a stay upon defendants' uncontested application.
[3] N.J.S.A. 2A:50-53 to 68.
[4] § 362(a). Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
* * *
(4) any act to create, perfect, or enforce any lien against property of the estate;
[5] See Appendix A for text of N.J.S.A. 2A:50-56.