27 A.3d 1222 (2011)
422 N.J. Super. 201
BANK OF NEW YORK as trustee for the Certificate Holders CWALT 2004 26T1, Plaintiff-Respondent,
v.
Sarah G. LAKS and Edward Einhorn, her husband, Defendants-Appellants, and
PNC BANK, National Association, Defendant.
No. A-4221-09T3
Superior Court of New Jersey, Appellate Division.
Submitted May 23, 2011.
Decided August 8, 2011.
*1223 Sarah G. Laks and Edward Einhorn, appellants pro se.
Stern, Lavinthal, Frankenberg & Norgaard, L.L.C., attorneys for respondent (Mark S. Winter, Roseland, on the brief).
Before Judges A.A. RODRÍGUEZ, GRALL and LeWINN.
The opinion of the court was delivered by GRALL, J.A.D.
The defendants in an action to foreclose a residential mortgage appeal from the denial of their motion to vacate the judgment of foreclosure and dismiss the complaint without prejudice. We reverse and remand for entry of an order granting that relief.
The central question on this appeal is whether defendants are entitled to relief because plaintiff served a pre-complaint written notice of intention to foreclose that failed to identify the "lender" as required by N.J.S.A. 2A:50-56(c)(11), a provision of the Fair Foreclosure Act (the Act), N.J.S.A. 2A:50-53 to -68. We conclude that they are.
The appeal also raises a second questionthe appropriate remedy for violation of the Act's notice of intention provision. The Act does not specify a remedy, and panels of this court have disagreed as to what it should be. Compare Cho Hung Bank v. Ki Sung Kim, 361 N.J.Super. 331, 346-47, 825 A.2d 566 (App.Div.2003) (concluding that a violation can be remedied by permitting service of the requisite notice while the foreclosure action is pending) with EMC Mortgage Corp. v. Chaudhri, 400 N.J.Super. 126, 139, 946 A.2d 578 (App.Div.2008) (concluding that a violation is best addressed by dismissal of the foreclosure complaint without prejudice). We conclude that dismissal without prejudice best effectuates the Legislature's purpose in adopting the Act.
Defendant Sarah Laks made a promissory note payable to the order of BSM Financial, L.P. in August 2004. To secure the note, Laks and her husband, defendant Edward Einhorn, executed a mortgage on their Lakewood home in favor of the Mortgage Electronic Registration System, Inc. (MERS)[1], as nominee for BSM Financial and its successors and assigns.[2] BSM *1224 Financial later indorsed the note in blank. Plaintiff Bank of New York as trustee for the Certificate Holders CWALT 2004 26T1, a securitized asset trust, claims the note was negotiated to it by physical delivery in October 2004. See N.J.S.A. 12A:3-201(b).
Laks missed her May 2008 payment on the note and every monthly payment thereafter. On August 13, Countrywide Home Loans,[3] plaintiff's loan servicer, sent a notice of intention to foreclose to Laks by certified mail, return receipt requested. The notice of intention recited that Countrywide was acting on behalf of the owner of Laks's promissory note, without identifying the owner. The notice of intention also warned that if Laks did not pay $21,279.64 to Countrywide within 30 days, then Laks's noteholder, again not identified, would institute foreclosure proceedings against her. The notice concluded by advising Laks that if she did not agree that default had occurred or if she disputed the amount required to cure her default, she could contact Countrywide at an address and telephone number stated in the notice. Nowhere on the notice was Laks informed that plaintiff was the owner of her promissory note nor was she given plaintiff's address. Three days before the foreclosure complaint was filed, MERS assigned Laks and Einhorn's mortgage to plaintiff.
On September 24, 2008, forty-two days after the notice of intention was mailed, plaintiff instituted foreclosure proceedings, and defendants filed a contesting answer. Laks admitted that she had defaulted, but she contended that plaintiff's notice of intention was defective because it did not state plaintiff's name and address. She also claimed that plaintiff had not proved by competent evidence that it had standing to sue on the note. Plaintiff moved to strike the answer and submitted what its representative asserted was a true copy of the note, which bore one indorsement, that of the originating lender, BSM Financial. The trial court concluded that the notice of intention was adequate and that plaintiff had standing; it therefore struck defendants' contesting answer.
Prior to entry of judgment, defendants moved for reconsideration and to dismiss the complaint, but judgment was entered before that motion was heard. Subsequently, the court denied defendants' motion but directed plaintiff to file proof that it held the note. Plaintiff did not comply, and defendants moved to vacate the judgment and dismiss the complaint. In response to defendants' motion, plaintiff produced a copy of the note that was different than the note it had produced earlierthis one had two additional indorsements, neither of which referred to plaintiff. The judge nonetheless found plaintiff's proofs adequate to establish standing and denied the motion.
On appeal defendants argue, as they did in the trial court, that the notice of intention was deficient for lack of plaintiff's name and address and that plaintiff did not prove by competent evidence that it had standing to sue.[4]

*1225 I

A
We first consider whether a lender can satisfy its obligation under N.J.S.A. 2A:50-56(c)(11) to state the "name and address of the lender" in its notice of intention by providing the name and address of its servicer. That is a question of statutory interpretation we consider de novo. In re Liquidation of Integrity Ins. Co., 193 N.J. 86, 94, 935 A.2d 1184 (2007).
The Legislature adopted the Fair Foreclosure Act to give homeowners "every opportunity to pay their home mortgages, and thus keep their homes" and to benefit lenders by allowing "residential mortgage debtors [to] cure their defaults and return defaulted residential mortgage loans to performing status." N.J.S.A. 2A:50-54. In furtherance of those objectives, the Act requires that in the event of default on a mortgage and at least thirty days before a mortgage lender accelerates the principal on a note or attempts to foreclose on a residential mortgage, the lender must send a notice to the debtor. N.J.S.A. 2A:50-56(a). The lendor's "duty" to provide the notice of intention required by the statute is "independent of any other duty to give notice." N.J.S.A. 2A:50-56(e).
Thus, compliance with this notice provision is, in effect, a condition the lender must satisfy in order to either "accelerate the maturity of any residential mortgage obligation" or "commence any foreclosure or other legal action to take possession of the residential property which is the subject of the mortgage." N.J.S.A. 2A:50-56(a). In fact, with narrow exceptions inapplicable here, "[c]ompliance with [N.J.S.A. 2A:50-56] shall be set forth in the pleadings of any legal action" to foreclose a residential mortgage. N.J.S.A. 2A:50-56(f).
The notice of intention must include specific information "state[d] in a manner calculated to make the debtor aware of the situation[.]" N.J.S.A. 2A:50-56(c).[5] The information the Legislature has deemed essential to the Act's purpose includes: "the particular obligation or real estate security interest"; "the nature of the default claimed"; the debtor's right to cure the default; what the debtor must do to cure; and the date by which it must be done to avoid the filing of a foreclosure complaint. N.J.S.A. 2A:50-56(c)(1)-(5). The notice also must advise the debtor of the consequences of a failure to cure specifically, that the lender may take steps to terminate the debtor's ownership of the property by filing a foreclosure action and that the debtor will be required to pay the lender's court costs and counsel fees if the debtor does not cure. N.J.S.A. 2A:50-56(c)(6)-(7).
In addition to the foregoing information about rights, responsibilities and consequences, the Legislature has determined that the notice of intention must include three items of information that are best characterized as helpful to a debtor interested in curing default. The first two are advice to seek counsel from an attorney including references to the New Jersey Bar Association, Lawyer Referral Service and Legal Servicesand a list of programs providing assistance for those seeking to cure default. N.J.S.A. 2A:50-56(c)(9)-(10). The third, and the one critical in this case, is "the name and address *1226 of the lender and the telephone number of a representative of the lender whom the debtor may contact if the debtor disagrees with the lender's assertion that a default has occurred or the correctness of the mortgage lender's calculation of the amount required to cure default." N.J.S.A. 2A:50-56(c)(11).
There is no question that the notice of intention mailed to Laks did not provide the name or address of the lender as required by subsection (c)(11). The notice of intention named no entity other than the mortgage servicer, Countrywide.
The Act defines the critical term. It provides that "`lender' means any person, corporation, or other entity which makes or holds a residential mortgage, and any person, corporation or other entity to which such residential mortgage is assigned." N.J.S.A. 2A:50-55. Countrywide, the only entity named in this notice of intention, does not fall within that definition. Countrywide did not make the mortgage agreement with defendants; BSM Financial did. Countrywide did not hold defendants' mortgage; it was held by MERS as nominee for BSM Financial and its successors and assigns. Under the facts asserted by plaintiff, at the time the notice was sent, plaintiff held the note indorsed in blank and the mortgage through MERS.[6]
Plaintiff does not claim that Countrywide is a "lender" within the meaning of the Act. In fact, Countrywide's notice of intention recognizes that it is not the lender by stating that Countrywide is acting on the lender's behalf, not its own. Because the statutory definition of lender excludes Countrywide, the notice of intention does not provide the information required by subsection (c)(11).
Plaintiff nonetheless contends that it satisfied subsection (c)(11) because its notice served the Legislature's purpose. According to plaintiff, had Laks wanted to dispute the event of default or the amount required to cure, Countrywide could have resolved the dispute on plaintiff's behalf.
Setting aside that this record does not support plaintiff's representation about the scope of Countrywide's authority, our primary goal in interpreting a statute is to discern the meaning and intent of the Legislature, which is generally best indicated by the statutory language. DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). In three different ways, the statutory language indicates that the Legislature intended for a lender to provide its name and address in order to satisfy its obligation pursuant to subsection (c)(11).
First, as a general rule a statutory "definition which declares what a term `means,' excludes any meaning that is not stated." Norman J. Singer & J.D. Shambie Singer, 2A Sutherland Statutory Construction § 47:7 (7th ed.2007); accord Colautti v. *1227 Franklin, 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684 n. 10, 58 L.Ed.2d 596, 607 n. 10 (1979); Leber v. Pa. Dep't of Envtl. Res., 780 F.2d 372, 376 (3d Cir.1986). The Legislature declared what the term lender means in the context of the Act, and that meaning does not include servicers such as Countrywide. The definition is drafted to encompass only the entity that has standing to bring a foreclosure action.
Second, if the Legislature intended the name of a mortgage servicer to suffice, then the first appearance of the phrase "of the lender" in subsection (c)(11) is meaningless. The statute requires "the name and address of the lender" and "the telephone number of a representative of the lender." If the Legislature did not deem the name and address "of the lender" important, then it could have excluded those words and required the lender provide "the name and address and the telephone number of a representative of the lender." Courts strive to avoid interpretations that treat statutory terms as "mere surplusage." DKM Residential Props. Corp. v. Twp. of Montgomery, 182 N.J. 296, 307, 865 A.2d 649 (2005). We see no reason to disregard that guiding principle here.
Third, if the Legislature wanted to let a lender's agent suffice under subsection (c)(11), it knew how to say so. Subsection (c)(5) requires that the notice of intention state "the name and address and phone number of a person to whom the payment or tender shall be made [to cure default]" without any requirement that the name and address be that of the lender. It could have used the same construction in subsection (c)(11) but did not. Courts also "refrain from concluding . . . that the differing language in the two subsections has the same meaning in each." Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17, 24 (1983).
There is nothing in the Act that permits us to ignore the unambiguous statutory language. The overreaching purpose of subsection (c)(11) is to impose a duty on the lender to identify itself. See Myron C. Weinstein, 30 New Jersey Practice § 24.15 (2d ed.2000). There is no reason to conclude that the Legislature meant to have lenders serving notices of intention that could leave debtors guessing about the identity of the entity threatening acceleration of a mortgage obligation or a foreclosure action.
Indeed, notices of intention that do not identify the lender have the potential to undermine the Legislature's purpose. As a practical matter, a notice that does not identify the lender is potentially confusing. One of the purposes of the notice of intention is to advise a defaulting debtor that she will be sued if she does not bring her mortgage loan current. See N.J.S.A. 2A:50-56(c)(6). A debtor who receives a notice of intention that does not refer to the lender and subsequently receives a foreclosure complaint filed by the lender will be justifiably confused. See R. 4:64-2(c)-(d) (as amended effective June 9, 2011) (recognizing that the plaintiff and its mortgage servicer may be different). This case illustrates the point. Nothing in this record indicates that defendants knew when plaintiff served the foreclosure complaint what connection, if any, it had with their note and mortgage. The notice of intention mentioned only Countrywide, but the complaint does not reference Countrywide at all. Defendants would be justifiably confused by who or what Bank of New York as trustee for the CWALT 2004 26T1 trust is and why it, rather than Countrywide, was attempting to foreclose on their home. A notice that identifies the lender, who will be the plaintiff in the eventual foreclosure action if the debtor does not cure her default, is obviously more informative and furthers the Legislature's *1228 goal of ensuring that defaulting borrowers are made aware of the situation they face. See N.J.S.A. 2A:50-56(c).
In sum, we conclude that the notice of intention sent to Laks was deficient because it did not state plaintiff's name and address.[7]

B
The question of remedy remains. One might argue that defendants in this case are not entitled to a remedy because they do not claim that they would have cured the default if they had known plaintiff's identity. In other words, there is no reason to assume they were harmed in any way by plaintiff's violation of the Act.
But, we cannot conclude that relief is appropriate only when there is a showing of harm. The statutory duties of the lender and concomitant protections for the debtor apply without regard to the debtor's position. The Act provides that "[w]aivers by the debtor of rights provided pursuant to the act are against public policy, unlawful, and void, unless given . . . pursuant to a [written] workout agreement. . . signed by the debtor." N.J.S.A. 2A:50-61. In light of this express statement, this court has consistently concluded that lenders must strictly comply with the Act. See Chaudhri, supra, 400 N.J.Super. at 139, 946 A.2d 578; Kim, supra, 361 N.J.Super. at 346, 825 A.2d 566.
We see no reason to treat this violation any differently. The Legislature has required lenders to serve a notice of intention that conforms with subsection (c)(11), and the wisdom of that requirement is not a question for a court to decide. If changes in the industry have rendered compliance more burdensome, then that problem should be brought to the Legislature's attention.
As we noted at the outset, panels of this court have divided on whether the proper remedy for violation of N.J.S.A. 2A:50-56 is re-service of a conforming notice or dismissal of the complaint without prejudice. Compare Kim, supra, 361 N.J.Super. at 346-47, 825 A.2d 566 (following GE Capital Mortgage Services, Inc. v. Weisman, 339 N.J.Super. 590, 592, 595, 773 A.2d 122 (Ch.Div.2000) and allowing service of a proper notice of intention within the pending action) with Chaudhri, supra, 400 N.J.Super. at 138-39, 946 A.2d 578 (rejecting Weisman and requiring dismissal without prejudice); see also Bank of N.Y. Mellon v. Elghossain, 419 N.J.Super. 336, 342, 16 A.3d 1132 (Ch.Div.2010) (same).
We hold that dismissal without prejudice is required for two reasons. First, the Act entitles a residential borrower to service of a conforming notice of intention before acceleration of a mortgage obligation and before commencement of foreclosure proceedings. N.J.S.A. 2A:50-56(a). A cure within thirty days of receipt of proper notice may well affect the debtor's obligation to pay counsel fees and costs. See N.J.S.A. 2A:50-56(c)(7); N.J.S.A. 2A:50-57(b)(3). Dismissal without prejudice ensures that defendants are not deprived of those non-waivable rights and that a plaintiff who has not fulfilled its duty under the *1229 Act will not reap a benefit from its noncompliance. Second, the remedy of dismissal without prejudice is consistent with the statutory mandate that a plaintiff in a residential foreclosure action plead compliance with the notice of intention precondition in its complaint. N.J.S.A. 2A:50-56(f); accord R. 4:64-1(b)(13).
In the end, the Legislature has imposed a duty that lenders must perform before they accelerate a residential mortgage obligation or commence an action to foreclose. In this case, plaintiff did not fulfill its obligation before filing the action, and, regardless of the relative merits and equities, it is not entitled to accelerate the mortgage principal or maintain a foreclosure action until it complies.

C
We have no reason to assume that notices of intention commonly fail to identify the lender as required by the Act. Nevertheless, we note that this opinion should not be understood to provide an avenue for setting aside a judgment of foreclosure where subsection (c)(11) was not raised prior to entry of judgment. Cf. Sroczynski v. Milek, 197 N.J. 36, 45, 961 A.2d 704 (2008) (holding, in a case involving wide-spread use of statutorily-deficient notices, that the decision would apply only in cases where the issue had been previously raised).

II
Because plaintiff may again file a foreclosure complaint against defendants, we comment briefly on defendants' claim that plaintiff did not have sufficient competent evidence of its standing to prevail on a motion for summary judgment. The certifications of plaintiff's representatives offered in the trial court are very similar to those we found insufficient in Wells Fargo Bank, N.A. v. Ford, 418 N.J.Super. 592, 15 A.3d 327 (App.Div.2011). If plaintiff again files a foreclosure complaint and seeks summary judgment on standing, plaintiff should consider the clear guidance provided in that decision.

III
We summarize our holdings. A notice of intention is deficient under N.J.S.A. 2A:50-56(c)(11) if it does not provide the name and address of the lender. A defendant who objects to inadequacy of the notice on that basis prior to entry of judgment is entitled to dismissal of the foreclosure complaint without prejudice.
Reversed and remanded for entry of an order vacating the judgment and dismissing the complaint without prejudice.
NOTES
[1] MERS is "a private corporation which administers a national electronic registry which tracks the transfer of ownership interests and servicing rights in mortgage loans." Bank of New York v. Raftogianis, 418 N.J.Super. 323, 332, 13 A.3d 435 (Ch.Div.2010). A lender participating in MERS will retain the underlying note, but have the mortgage executed and recorded in favor of MERS as nominee for the lender. Ibid. Lenders use this system to transfer their interest in a mortgage to other participating lenders without having those transactions publicly recorded; MERS remains the record holder of the mortgage throughout. Ibid.
[2] Defendant PNC Bank, National Association, did not participate in the trial court or this court, and we use the term defendants to refer collectively to Laks and Einhorn.
[3] Countrywide later changed its name to BAC Home Loans Servicing. For ease of reference, we will refer to plaintiff's servicer throughout as Countrywide.
[4] Defendants also argue that plaintiff was required to serve a notice of intention on Einhorn; that plaintiff's notice of intention was deficient in ways other than not stating plaintiff's name and address; and that plaintiff did not have standing to enforce the note because it no longer exists as a corporate entity. We have considered these contentions and find them without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).
[5] The Act provides that "[t]he Attorney General, in consultation with the Commissioner of Banking, shall promulgate regulations . . . necessary to implement this act, including but not limited to, regulations governing the form and content of notices of intention to foreclose." N.J.S.A. 2A:50-68. Nevertheless, we were not able to identify any pertinent regulations.
[6] The Fair Foreclosure Act was adopted in 1995. L. 1995, c. 244. At that point in time, MERS and its system of separating the note and mortgage was new. See Michael Powell and Gretchen Morgenson, MERS? It May Have Swallowed Your Loan, N.Y. Times, March 6, 2011, at BU1 (noting that MERS was founded in 1995). The definition of "mortgage lender" in N.J.S.A. 2A:50-55 could, but need not be, amended to account for any complexity in identification of the "mortgage lender" injected by the fact that MERS holds a mortgage as nominee for the lender. See generally Wells Fargo Bank, N.A. v. Ford, 418 N.J.Super. 592, 597, 600, 15 A.3d 327 (App.Div.2011) (noting that standing to foreclose requires ownership of both the note and mortgage). Lenders participating in MERS can eliminate any confusion by obtaining an assignment of the mortgage prior to service of the notice. See R. 4:64-1(b)(10). In this case, plaintiff obtained its assignment of the mortgage between its service of the notice of intention and filing of the complaint. If the complaint is refiled, MERS's involvement will not be at issue.
[7] Our holding is in accord with the recently-published trial court opinion of Bank of N.Y. Mellon v. Elghossain, 419 N.J.Super. 336, 16 A.3d 1132 (Ch.Div.2010). We disagree with that opinion in only one respect; a notice of intention need not state both the servicer's and lender's full contact information. See id. at 341, 16 A.3d 1132. It need state only what subsection (c)(11) requires: the name and address of the lender, and the telephone number of a representative of the lender, which may, but need not, be the servicer. Obviously, if the representative is an entity other than the lender, then that entity's name should be provided with the phone number.